<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JASON RAINS, DAVID CERUTTI, PAIGE BISHOP, CARLOS GUIDORIZZI, BRIAN GRESH, AND HEATHER RICHARDS, *Individually and on behalf of all others similarly situated*, | Case No. 22cv4370 (EP) (JSA) **OPINION** |
| Plaintiffs, | |
| v. | |
| JAGUAR LAND ROVER NORTH AMERICA, LLC, | |
| Defendant. | |

**PADIN, District Judge.**

This class action arises from an alleged defect in 2020-2022 Land Rover Defender vehicles. Plaintiffs, consumers who either purchased or leased one such vehicle, sued Defendant Jaguar Land Rover North America, LLC ("Land Rover"). *See* D.E. 1; D.E. 16 (the First Amended Complaint, or "FAC"). Land Rover moves to dismiss the FAC under Federal Rules of Civil Procedure 12(b)(1) and (6). D.E. 18 ("Mot."). Plaintiffs oppose. Land Rover has replied. The Court decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78(b). For the reasons below, Land Rover's motion will be **GRANTED in part** and **DENIED in part**.[1]

---

[1] All dismissals are without prejudice. *See Prudential Ins. Co. of Am. v. Bank of Am., Nat'l Ass'n*, 14 F. Supp. 3d 591, 596 (D.N.J. 2014) (quoting *New York v. Hill*, 528 U.S. 110, 118 (2000)) (Dismissal of a complaint with prejudice is a "'harsh remedy'" that "is [only] appropriate if amendment would be inequitable or futile."); *Cottrell v. Alcon Labs.*, 874 F.3d 154, 165 (3d Cir. 2017 (dismissing claims with prejudice when the court lacks subject matter jurisdiction is improper).

## I.    BACKGROUND[2]

This class action arises from a windshield defect ("Defect") present in 2020-2022 Land Rover Defenders (collectively, "Vehicles") that Land Rover marketed, distributed, sold, warranted, and serviced.  FAC ¶ 1.  The Vehicles were a "fully re-designed" Defender line, with the prior Defender line being discontinued in 1997.  *Id.* ¶ 124.  Plaintiffs are consumers who purchased or leased a Class Vehicle with the Defect.  *Id.* ¶¶ 1, 2.  The Defect is a deficiency in (1) the materials used to construct the windshields and/or (2) the Vehicles' structure.  *Id.* ¶ 3.  Because of the Defect, the Vehicles' windshields chip or crack from minor impacts, such as an airborne, roadside pebble, and even from no impact at all.  *See id.* ¶¶ 4, 7, 57.

The splintered windshields pose multiple safety risks.  First, there is a "safety hazard to drivers, passengers, and pedestrians because a spontaneously shattering or cracking windshield can impair the driver's view, distract the driver, and result in dislodged glass . . . ."  *Id.* ¶ 8.  "Moreover, in . . . a collision, an intact windshield assists in transferring the force of a front-end impact down to the chassis, which reduces the effect of the impact felt inside the vehicle and helps protect the passengers."  *Id.* ¶ 10.  But, if a cracked vehicle's windshield "subsequently shatters during a collision, [then] the vehicle occupants are at greater risk of sustaining injuries."  *Id.*  A non-defective windshield is also important in a collision because it functions as a "vital component of a vehicle's safety restraint system," such as by "provid[ing] support that a passenger-side airbag needs to deploy properly."  *Id.* ¶ 11.  Additionally, "the windshield provides much of the roof support for most vehicles[,]" which helps "preserv[e] the structural integrity of the vehicle's

---

[2] This section derives mainly from the FAC. On a motion to dismiss, the Court takes all well-pleaded facts as true.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

passenger compartment during roll-overs . . . [to] keep[] the roof from collapsing and crushing the driver and passengers." *Id.* ¶ 12.

As a result of the Defect, Plaintiffs paid out-of-pocket for costly repairs at local Land Rover dealerships. *Id.* ¶ 6. When Plaintiffs purchased their Vehicles, "Land Rover promised to 'correct defects in the factory-supplied materials or factory workmanship' without charge within 4 years or 50,000 miles in service, whichever occurs first" ("Warranty"). *Id.* ¶¶ 39, 53, 66, 85, 99, 114. But when Plaintiffs requested reimbursement for the windshield repairs from the dealerships, these requests were denied. *See id.* ¶¶ 43, 57, 79, 89, 106, 120. Land Rover affirmed the denials, stating that the Warranty does not cover damage caused by outside sources. *See id.* ¶¶ 44, 57, 80, 90, 107-08, 121-22, 148. And because the repairs merely replaced one brittle windshield with another, some Plaintiffs have obtained multiple repairs, which also were not reimbursed. *See id.* ¶¶ 78, 93.

Plaintiffs believe that Land Rover knew of and concealed the Defect in the Vehicles at the time of sale and repair. Land Rover had multiple sources evidencing the Defect, such as (1) "pre-production testing"; (2) "pre-production design failure mode and analysis data"; (3) "production design failure mode and analysis data"; (4) "early consumer complaints made exclusively to Land Rover's network of dealers[hips] and directly to Land Rover"; (5) "aggregate warranty data compiled from Land Rover's network of dealers[hips]"; (6) testing conducted by Land Rover in response to consumer complaints"; and (7) "repair order and parts data received by Land Rover from Land Rover's network of dealers[hips]." *Id.* ¶ 134; *see also id.* ¶ 135 (discussing the "pre-release process of designing, manufacturing, engineering, and performing durability testing" on the Vehicles"); *id.* ¶¶ 137-38 (discussing the "higher-than-expected" number of replacement windshields and consumer complaints made to Land Rover and its dealerships); *id.* ¶¶ 140-49 (discussing various sources of online complaints that Land Rover monitors, such as National

3

Highway   of   Traffic   and   Safety   Administration   ("NHTSA")   complaints; www.LandRoverForums.com, a Land Rover vehicle enthusiast website; and Facebook discussions).

On June 30, 2022, Plaintiffs Jason Rains and David Cerutti filed their initial complaint against Land Rover (D.E. 1), which was amended on November 23, 2022 (FAC).  The FAC alleges twenty-one counts under federal and state law by six named Plaintiffs, which are pursued on behalf of a nationwide class and unnamed individuals in the named Plaintiffs' respective states.  *See generally id.*  These counts are: (1) breach of express and implied warranties under the Magnuson Moss Warranty Act (MMWA), § 15 U.S.C. 2301; (2) statutory and common law consumer fraud claims;[3] (3) common law unjust enrichment claims;[4] (4) statutory breach of express warranty claims;[5] and (5) statutory breach of the implied warranty of merchantability claims.[6]

On December 27, 2022, Land Rover moved to dismiss the FAC under Federal Rules of Civil Procedure 12(b)(1) and (6).  Plaintiffs oppose.  D.E. 23 ("Opp'n").  Land Rover has replied. D.E. 29 ("Reply").

## II.   LEGAL STANDARDS

### A.  Failure to State a Claim Under Federal Rule of Civil Procedure 12(b)(6)

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation

---

[3] New Jersey, Utah, Florida, California, Colorado, and Louisiana.
[4] Same states as previous claim.
[5] Same states as previous claim.
[6] New Jersey, California, Colorado, and Louisiana.

4

marks omitted).  Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "'short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss, the plaintiff's claims must be facially plausible, meaning that the well-pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  In deciding the motion, "a court must consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Fraud-based claims are "'subject to heightened specificity requirements'" pursuant to Federal Rule of Civil Procedure 9(b).  *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 225 (D.N.J. 2020) (quoting *MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005)).  For fraud-based claims, the plaintiff must state with particularity the circumstances constituting fraud or mistake such that the defendant is "on notice of the precise misconduct with which they are charged."  *Ponzio*, 447 F. Supp. 3d at 225 (internal quotation marks omitted).  Though the plaintiff need not plead "every material detail" and may allege the defendant's mental state generally, "some measure of substantiation" is required.  *Id.* (internal quotation marks omitted).  "At a minimum, [the] plaintiff 'must allege who made a misrepresentation to whom and the general content of the misrepresentation.'"  *Id.* at 226 (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004)).

**B.  Subject Matter Jurisdiction Under Federal Rule of Civil Procedure 12(b)(1)**

Motions to dismiss for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), may be raised at any time.  *McCalley v. Samsung Elecs. Am., Inc.*, 2008 WL 878402, at *2 (D.N.J. Mar. 31, 2008).  Challenges to a court's subject matter jurisdiction are considered "factual attack[s]."  *Mortensen v. First Fed. Sav. And Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) (contrasting to a Rule 12(b)(6) challenge, which attacks the facial plausibility of a complaint).  "Because at issue in a factual 12(b)(1) motion is the trial court's . . . power to hear the case[,] . . . the trial court is free to weigh the evidence . . . [and] no presumptive truthfulness attaches to plaintiff's allegations . . . ."  *Id.*

A motion to dismiss for lack of standing is "properly brought pursuant to [Federal] Rule [of Civil Procedure] 12(b)(1)."  *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (cleaned up).  "Article III governs constitutional standing and limits [federal courts'] jurisdiction to actual cases or controversies."  *Neal v. Volvo Cars of North Am., LLC*, 794 F.3d 353, 358 (3d Cir. 2015) (internal quotation marks omitted).  A plaintiff can establish that their case presents a controversy, and, consequently, that they have standing, by demonstrating: (1) an injury in fact, (2) a sufficient causal connection between the injury claimed and the conduct complained of, and (3) a likelihood that a favorable decision would redress the party's complained-of injury.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

**III.    ANALYSIS**

**A.  The MMWA Claims Fail for Lack of Subject Matter Jurisdiction**

 Land Rover argues that the Court lacks subject matter jurisdiction over the Plaintiffs' MMWA claims[7] because there are less than 100 named plaintiffs.  Mot. at 35.  The MMWA vests

---

[7] Count One.

jurisdiction "(A) in any court of competent jurisdiction in any State or the District of Columbia; or (B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection." 15 U.S.C. § 2310(d)(1)(A)-(B).  In the latter scenario, plaintiffs must satisfy three requirements: (1) the amount in controversy for each plaintiff exceeds $25; (2) the total amount in controversy exceeds $50,000; and (3) "if the action is brought as a class action, . . . the number of named plaintiffs is at least 100."  15 U.S.C. § 2310(d)(3)(A)-(C) ("Paragraph Three").  Here, Plaintiffs do not dispute that there are less than 100 named plaintiffs.[8]  Opp'n at 35.  Instead, Plaintiffs argue that the Court should allow them to "pursue the MMWA claims individually even if they cannot presently pursue them on a class basis[,]" with an opportunity to amend the MMWA claims were the case to satisfy the "100 plaintiff threshold."  *Id.* (citing *Sloan v. Gen. Motors LLC*, 2020 WL 5517244, at *5 (N.D. Cal. Sept. 14, 2020)).

The Court disagrees.  "As the statute's plain text demonstrates, the only way [for a federal court] to invoke federal jurisdiction is through [15 U.S.C. Section] 2310(d)(1)(B) . . . ."  *Rowland v. Bissell Homecare, Inc.*, 73 F.4th 177, 180 (3d Cir. 2023).  Paragraph Three illustrates Congress' desire to limit a federal court's ability to hear MMWA claims.  *Id.* at 181.  Thus, in a class action case, the Court can exercise jurisdiction "*only if*" there are "at least 100" named plaintiffs.  *Id.* (emphasis added); *see also* Paragraph Three.  Plainly, there are less than 100 named plaintiffs in this class action, and therefore, the Court lacks jurisdiction.  *See* Opp'n at 35; *Floyd v. Am. Honda Motor Co., Inc.*, 966 F.3d 1027, 1035 (9th Cir. 2020) (discussing the jurisdictional significance of the 100 named plaintiff requirement); *Kavon v. BMW of North Am., LLC*, 605 F. Supp. 3d 622, 631 (D.N.J. 2022) ("[E]very court in this District to address *Floyd* has followed its reasoning.").

---

[8] There are six.

Accordingly, the Court will grant Land Rover's motion and dismiss Plaintiffs' MMWA claims without prejudice.[9]

### B.  The Court Determines *Sua Sponte* that the Nationwide Claims Lack Standing

The Court has a "constitutionally dictated requirement[]" to raise issues of subject matter jurisdiction *sua sponte*, including standing. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 99 (1998); *Petroleos Mexicanos Refinacion v. M/T King A (EX-TBILISI)*, 377 F.3d 329, 334 (3d Cir. 2004) ("Standing is a question of subject matter jurisdiction.").  This duty arises from Article III, which "limits [federal courts'] jurisdiction to actual cases or controversies."  *Neal*, 794 F.3d at 358 (internal quotation marks omitted).  A court's threshold jurisdictional inquiry is whether a plaintiff established an injury in fact for each claim.  *Lujan*, 504 U.S. at 560-61.  Here, Plaintiffs bring multiple claims on behalf of a "nationwide class,"[10] which includes individuals in states where no named Plaintiff suffered injury.  *See* FAC ¶ 156.  The Court declines to exercise jurisdiction over these claims to the extent they are brought on behalf of a nationwide class.

The Court acknowledges that "there is disagreement in this district over whether plaintiffs in a class action may assert claims under the laws of states where the complaint does not allege connections between the named plaintiffs and those states."  *Cohen v. Subaru of Am., Inc.*, 2022 WL 721307, at *7 (D.N.J. Mar. 10, 2022).  However, the Court agrees with the authority finding that "a plaintiff must demonstrate standing for *each claim* he seeks to press."  *Id.* (emphasis added) (cleaned up); *see also Ponzio*, 447 F. Supp. 3d at 223 (same).  Otherwise, "a plaintiff would be able to bring a class action complaint under the laws of nearly every state . . . without having to allege concrete, particularized injuries relating to those states, thereby dragging defendants into

---

[9] Count One.  Because the Court lacks subject matter jurisdiction, it will not address Land Rover's other arguments for dismissal.

[10] Counts Two (Fraudulent Concealment) and Three (Unjust Enrichment).

expensive nationwide class discovery, potentially without a good-faith basis." *Ponzio*, 447 F Supp. 3d at 223.  As such, Plaintiffs are limited to asserting claims on behalf of individuals in states where at least one named Plaintiff has standing for that claim.  *See id.*; *Cohen*, 2022 WL 721307, at *7.

Accordingly, the Court will dismiss claims to the extent they are brought on behalf of a nationwide class without prejudice.[11]

### C.  Plaintiffs Sufficiently Plead the Existence of a Defect

Land Rover argues that the remaining claims[12] should be dismissed because Plaintiffs do not sufficiently plead the existence of a defect.  Mot. at 4.  Land Rover states that Plaintiffs fail to satisfy Rule 8's pleading requirements because they make only a "conclusory and unsupported . . . claim that their windshields cracked" before making "the unsupported leap that the windshield must have not been strong enough due to 'deficient materials' or 'a deficiency in the structure'" of the Vehicles.  *Id.* (quoting FAC ¶¶ 3, 126).  According to Land Rover, were the Court to find Plaintiffs' allegations sufficient, it would "eviscerate Rule 8's directive that a complaint put the defendant on notice of the specific wrongdoing in the case[,]" thus allowing similar allegations to be asserted "with respect to any automotive component . . . ."  Reply at 1.  Plaintiffs disagree.  Opp'n at 4.

The Court agrees with Plaintiffs.  Rule 8 requires that a complaint provide "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  This is a liberal standard.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).

---

[11] Count Two (Fraudulent Concealment) and Count Three (Unjust Enrichment).  The Court notes that Count One (MMWA), which the Court previously determined will be dismissed for lack of subject matter jurisdiction (*see* Section III(A)), also brings claims on behalf of a nationwide class. *See* FAC at 45.
[12] Counts Four to Twenty-One.

9

In the context of pleading a vehicle defect, courts have found a sufficiently pleaded defect when the plaintiffs identify (1) the part of the class vehicles that they believe is defective and (2) examples of how the defect allegedly manifests. *Milisits v. FCA US LLC*, 2021 WL 3145704, at *3 (E.D. Mich. July 26, 2021) (citing cases); *see also Weston v. Subaru of Am., Inc.*, 2022 WL 1718048, at *5 (D.N.J. May 26, 2022) (same). Here, the FAC (1) identifies the windshields as defective in materials and/or structure and (2) provides examples of how the Defect manifests as large cracks throughout the windshields from a minor, disproportionate impact or from no impact at all. *See* FAC ¶¶ 4, 7, 57. This is all Rule 8's liberal pleading standard requires.

Land Rover also argues that the FAC fails to explain "why" the Defect occurs; however, Plaintiffs are "not required to plead the mechanical details of an alleged defect in order to state a claim." *Milisits*, 2021 WL 3145704, at *3 (internal quotations omitted). Indeed, pre-discovery, the lack of these detailed allegations is "unsurprising, and not fatal . . . ." *Id.* (cleaned up).

Accordingly, the Court will deny Land Rover's motion to dismiss the remaining claims under Rule 8.

### D. The Statutory and Common Law Fraud Claims

*1. Plaintiffs adequately plead their omission-based claims*

Land Rover argues that all of Plaintiffs' statutory and common law fraud claims[13] should be dismissed. Mot. at 6, 21. As a threshold matter, the parties dispute how strictly the Court should apply the Rule 9(b) standard to these claims. Opp'n at 8-9; Mot. at 6, 21; *see also* Fed. R. Civ. P. 9(b).

---

[13] Counts Four, Seven, Nine, Eleven, Twelve, Sixteen, and Nineteen (statutory claims) and Count Two (common law fraudulent concealment claims). Because the pleading standard for these claims is the same, the Court will analyze the claims together unless otherwise noted.

Generally, a plaintiff can plead statutory and common law frauds under two theories: (1) affirmative misrepresentation and/or (2) fraudulent omission/concealment. *See, e.g.*, *Ponzio*, 447 F. Supp. 3d at 225-27. Plaintiffs, who bring only omission-based claims, argue that omission-based claims are analyzed under a relaxed application of Rule 9(b). *See* Opp'n at 9. In contrast, Land Rover argues there is no distinction, and the FAC's allegations must be substantively similar to "the first paragraph of any newspaper story—that is, the who, what, when, where, and how of the events at issue." Mot. at 6-7 (internal quotations marks omitted); *see also* Reply at 2.

The Court agrees with Plaintiffs. Land Rover's argument "ignores the fact that [c]ourts must be sensitive to the [reality] that application of Rule 9(b) prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud." *Ponzio*, 447 F. Supp. 3d at 228 (cleaned up). Unlike affirmative misrepresentation claims, which do not relax Rule 9(b)'s heightened standard, omission-based claims are adequately pled "so long as . . . [the] general allegations of knowledge suffice to infer [(1)] what defendant is alleged to have known and [(2)] when." *Id.* (internal quotation marks omitted). In other words, the totality of Plaintiffs' allegations must "support a plausible inference" that Land Rover knew of the Defect at the time of sale of the Plaintiffs' Vehicles. *Id.* at 231 (internal quotation marks omitted). To determine this, the Court must breakdown what Land Rover is alleged to have known prior to the sale of each Plaintiff's Class Vehicle. Because the Court finds that the first purchaser among the named Plaintiffs, Plaintiff Gresh, adequately pleads pre-sale knowledge, the Court necessarily finds that all remaining Plaintiffs adequately plead pre-sale knowledge.[14]

---

[14] The remaining Plaintiffs purchased their Vehicles on January 22, 2021 (Bishop, FAC ¶ 63); December 29, 2021 (Rains, *id.* ¶ 36); March 12, 2021 (Richards, *id.* ¶ 196); May 2021 (Guidorizzi, *id.* ¶ 82); and February 9, 2022 (Cerutti, *id.* ¶ 50).

Plaintiff Gresh purchased his Vehicle on October 31, 2020, approximately fours months after the re-designed Defenders/Vehicles were released in June 2020. *See* FAC ¶¶ 111, 124. This purchase occurred after (1) Land Rover's alleged pre-release designing, manufacturing, and durability testing of the Vehicles; (2) a "higher-than expected number of replacement windshields" were ordered "within weeks after Land Rover began selling" the Vehicles; and (3) a "higher than-expected number of . . . consumer complaints regarding windshield failure [were made] within weeks after Land Rover began selling" the Vehicles. *Id.* ¶¶ 134-38.  However, the purchase happened before any of the FAC's cited online consumer complaints, and thus the Court will not consider them as providing pre-sale knowledge. *See id.* ¶¶ 140-49.  Land Rover attacks each remaining allegation of pre-sale knowledge.

First, Land Rover argues that the FAC alleges only "some sort of unspecified [pre-release] testing" that "would have likely occurred" and through which Land Rover "would have gained" knowledge regarding durability issues.  Mot. at 11.  The Court disagrees.  The FAC makes specific allegations of what knowledge Land Rover would have gained about the Vehicles' windshields through pre-release testing.[15]  *See* FAC ¶ 135.  Further, given the importance of a vehicle's windshield, which allows the driver to see the road (*id.* ¶¶ 8-9) and plays a vital role during collisions (*id.* ¶¶ 10-12), it is plausible that Land Rover would test the durability of a windshield. This testing could have indicated that the windshields "crack spontaneously or as a result of minor impacts that should not have resulted in windshield cracks . . . ."  *Id.* ¶ 136; *see also Ponzio*, 447

---

[15] "[T]he types and properties of materials used to make the[ windshields], including their durability and whether those materials would weaken over time regardless of wear and use; the basic engineering principles behind their construction; the forces and stresses the windshields would face; when and how the windshields would fail; and the cumulative and specific impacts on the windshields caused by wear and use, the passage of time, and environmental factors."  FAC ¶ 135.

F. Supp. 3d at 227 (finding allegations that the defendants would have been required to test the allegedly defective paint and "how it performed in simulated real-world conditions to determine the quality and durability of the paint" supported an inference of pre-sale knowledge).

The cases cited by Land Rover are distinguishable. *Cf., e.g.*, *Wesley v. Samsung Elecs. Am., Inc.*, 2021 WL 5771738, at *3 (D.N.J. Dec. 3, 2021) (internal quotation marks omitted) (finding pre-sale knowledge inadequately pleaded when the plaintiffs alleged only that the defendant "had data from pre-release testing concerning the defect" and no "further details"); *Brown v. Hyundai Motor Am.*, 2019 WL 4126710, at *7 (D.N.J. Aug. 30, 2019) (finding the same when the plaintiffs pleaded only that "internal pre-sale durability testing" would have revealed the alleged defect). And, though Land Rover argues the FAC should allege "what, if anything, th[e] tests actually revealed" (Mot. at 11), the Court must be sensitive to the fact that Plaintiffs do not have access to that information (*Ponzio*, 447 F. Supp. 3d at 228).

Second, Land Rover argues that the FAC's allegations of "'higher-than expected' numbers of replacement windshields and . . . [owner] complaints to dealers[hips]," without numbers or dates in support, "do not show knowledge of a class-wide defect." Mot. at 12. The Court disagrees. The FAC alleges that the Defect "can and does manifest almost immediately[,] often within weeks of the [] Vehicles first being driven . . . . ." FAC ¶ 139. This inference is supported by the named Plaintiffs' experiences (*see id.* ¶¶ 36-42, 50-56, 63-69, 78, 82-88, 93, 96-102, 111-17) and by the experiences detailed in online consumer complaints (*see, e.g.*, *id.* ¶¶ 140-49). Plaintiffs also adequately plead that the Defect poses multiple safety concerns, including impairing the driver's view, a plainly obvious issue. *See id.* ¶¶ 8-12. Thus, it is plausible that throughout the course of approximately four months, enough consumers experienced the Defect and sought repair and/or made complaints to the dealerships and/or Land Rover. *See Ponzio*, 447 F. Supp. 3d at 230

(finding allegations of "where and when consumer complaints were made" and how they "could have alerted [the defendants] to the defect" supported an inference of pre-sale knowledge).

Again, the cases cited by Land Rover are distinguishable.  For example, in *Wesley*, the plaintiffs failed to allege "what models were allegedly experiencing problems[] or how any of this information put [the defendant] on notice of the alleged defect."  2021 WL 5771738, at *3. Critically, in *Wesley*, the plaintiffs' allegations would have required the defendant to "know[] or a single defect in more than 87 models" of the product.  *Id.*  Here, Plaintiffs allege that only the 2020-2022 Defenders, the first Defenders made since 1997, were experiencing the Defect.  FAC ¶ 124.  The second case Land Rover cites in support, *Cotte v. CVI SGP Acquisition Trust*, is also distinguishable.  2022 WL 464307, at *10 (D. Utah Feb. 15, 2022).  There, the court found fraudulent intent was inadequately pleaded when the plaintiffs "include[d] only a single conclusory allegation that '[the defendants] purposefully engaged in the[ fraudulent] activities knowingly and intentionally to harm consumers and gain an advantage over its competitors.'"  *Id.* (quoting the operative complaint).  Here, Plaintiffs do not allege merely that Land Rover had pre-sale knowledge and concealed it; rather, they support this inference through detailing (1) how and why the Defect would have arisen in the Vehicles within months of the 2020 release and (2) how and why the Defect would pose a safety concern that would prompt quick action by consumers.

When considering the totality of these allegations, the Court finds Plaintiffs have sufficiently alleged (1) that Land Rover knew of the Defect (2) prior to October 2020.  *See Ponzio*, 447 F. Supp. 3d at 228.

Accordingly, the Court will deny Land Rover's motion to dismiss the statutory and common law fraud claims[16] on this basis.

### 2. *Plaintiffs' Statutory Fraud Claims*

#### a. *The New Jersey claim will be dismissed for failure to plead an ascertainable loss*

Land Rover additionally argues that Plaintiff Cerutti's[17] New Jersey Consumer Fraud Act ("NJCFA")[18] claim[19] should be dismissed. Mot. at 15. To adequately plead a NJCFA claim, a plaintiff must, among other requirements, demonstrate "an ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009). Land Rover argues that for a loss to be "ascertainable," the FAC must "plead facts like the price paid and what a hypothetical price would be for the product with the purported defect, the cost to replace the product, the cost to repair the product, or some other comparable measure specifically enumerated in the complaint." Mot. at 16 (collecting cases). Because the FAC fails to provide these numbers, Land Rover claims the NJCFA claim should be dismissed. *Id.* Plaintiffs argue that this level of specificity is not required at this stage of litigation, and therefore, the FAC's allegation that Plaintiff Cerutti's Class Vehicle "require[s] repairs or replacement and [is] worth less money because of the Defect" (FAC ¶ 213) is sufficient. Opp'n at 16.

The Court agrees with Land Rover. Though the scope of "ascertainable" is not explicitly defined, more recently, "'[c]ourts in this District have required plaintiffs to specify the price paid for the product and the price of comparable products to adequately state a claim under the NJCFA.'" *Peruto v. TimberTech Ltd.*, 126 F. Supp. 3d 447, 459 (D.N.J. 2015) (quoting *In re*

---

[16] Counts Four, Seven, Nine, Eleven, Twelve, Sixteen, and Nineteen (statutory claims) and Count Two (common law fraudulent concealment claims).

[17] The New Jersey representative.

[18] N.J.S.A. § 56:8-1, *et seq.*

[19] Count Four.

*Riddell Concussion Reduction Litig.*, 77 F. Supp. 3d 422 (D.N.J. 2015) (collecting cases)). Plaintiffs concede that they do not provide this information.  *See* Opp'n at 16.

Accordingly, the Court will dismiss Plaintiff Cerutti's NJCFA claim[20] without prejudice.

### b. *The California claim will be dismissed for failure to plead lack of an adequate legal remedy*

Land Rover additionally argues that Plaintiff Carlos Guidorizzi's[21] California Unfair Competition Law ("CUCL")[22] claim[23] should be dismissed.  Mot. at 17.  Land Rover premises this argument on the Ninth Circuit's recent holding in *Sonner v. Premier Nutrition Corporation*, which found that the plaintiff could not pursue equitable relief under the CUCL because they had not adequately shown that they lacked an adequate legal remedy.  *Id.* (citing 971 F.3d 834 (9th Cir. 2020)).  Land Rover also interprets *Sonner* to bar alternative pleading of equitable and legal relief. Reply at 5.  Plaintiffs argue that *Sonner* does not categorically bar their ability to seek equitable relief; rather, the equitable relief must be distinct from the legal relief.  Opp'n at 17-18.  Because the FAC seeks an injunction designed to prevent future harm, distinct from damages to compensate for past harm, Plaintiffs argue the FAC adequately pleads the CUCL claim.  *Id.*

The Court agrees with Plaintiffs that *Sonner* does not categorically bar their ability to plead legal and equitable relief under the CUCL, but agrees with Land Rover that Plaintiffs have not adequately pleaded that they lack an adequate legal remedy.  Recently, courts in this District and California have found that "nothing in *Sonner* precludes plaintiffs from [pleading equitable relief] in the alternative to remedies at law."  *Cepelak v. HP Inc.*, 2021 WL 5298022, at *2 (N.D. Cal. Nov. 15, 2021); *see also Hickman v. Subaru of Am., Inc.*, 2022 WL 11021043, at *12 (D.N.J. Oct.

---

[20] Count Four.
[21] The California representative.
[22] Cal. Bus. & Prof. Code §§ 17200, *et seq.*
[23] Count Twelve.

19, 2022) (internal quotation marks omitted) ("The issue [in *Sonner*] is not whether a pleading may seek distinct forms of relief in the alternative, but rather whether a prayer for equitable relief states a claim if the pleading does not demonstrate the inadequacy of a legal remedy."); *Rieger v. Volkswagen Group of Am., Inc.*, 2023 WL 3271116, at *7 (D.N.J. May 4, 2023) (same).  However, the FAC must still "satisf[y] the requirement of alleging the inadequacy of legal remedies." *Rieger*, 2023 WL 3271116, at *8.  And, though courts in this District generally find "that it is premature to dismiss a claim for relief at the pleading stage[,]" courts have rejected applying this general rule in the "narrow context" of CUCL claims.  *Id.* at *7 (internal quotation marks omitted).[24]

Here, though Plaintiffs seek alternative relief through an injunction, the FAC lacks any allegations as to *why* legal relief is inadequate.  The FAC merely states it is seeking an injunction, not why that injunction is necessary.  FAC ¶ 329; *cf. In re Subaru Battery Drain Prods. Liab. Litigation*, 2021 WL 1207791, at *29 (D.N.J. Mar. 31, 2021) (emphasis added) (*Sonner* was satisfied where the plaintiffs "argue[d] that [the d]efendants must be enjoined from their current repairs practices [of the battery defect] *because* the battery itself is not the root cause of the failures. Therefore*, an injunction is required to prevent future harm . . . .*").

Accordingly, the Court will dismiss Plaintiff Guidorizzi's CUCL claim[25] without prejudice.

---

[24] *See, e.g.*, *infra* Section E (applying this general rule to common law unjust enrichment claims).
[25] Count Twelve.

*c.  The Utah and Colorado claims will not be dismissed because issues of statutory class action bars are better suited for class certification*

Land Rover additionally argues that Plaintiff Rains', the Utah representative, Utah Consumer Sales Practices Act ("UCSPA")[26] claim[27] should be dismissed.  Mot. at 18-19.  Pursuant to the UCSPA, "[a] consumer may bring a class action for money damages only when the defendant's conduct violates an existing rule, court order, or consent judgment."  *Id.* at 19 (citing Utah Code Ann. § 13-11-19(4)(a)).  Because the FAC "identifies no such basis[,] . . . it should be dismissed."  *Id.*  Relatedly, Land Rover also argues that Plaintiff Heather Richards', the Colorado representative, Colorado Consumer Protection Act ("CCPA")[28] claim[29] should be dismissed because the CCPA does not permit "the recovery of actual damages, treble damages, and attorneys' fees in class actions."  *Id.* at 20 (citing Colo. Rev. Stat. § 6-1-113(2)).

Plaintiffs' response to both arguments is the same.  First, Plaintiffs argue that the statutes Land Rover cites are state law class action bars, which do not apply in federal court pursuant to the Supreme Court's plurality decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Company*.  Opp'n at 19 (citing 559 U.S. 383 (2010)).  However, as both parties acknowledge, "[l]ower courts disagree whether the plurality's opinion or Justice Steven's [narrower] concurrence controls[,]" and the Third Circuit has yet to apply *Shady Grove* to class action bars.  *Id.* at 19-20; Reply at 6-7.  Second, Plaintiffs argue that regardless of the applicability of *Shady Grove*, "any challenge to Plaintiffs' ability to represent absent class members is premature at the pleading stage because such challenges are more appropriately addressed at class certification."  Opp'n at 20-21.

---

[26] Utah Code Ann. § 13-11-1, *et seq.*
[27] Count Seven.
[28] Colo. Rev. Stat. § 6-1-101, *et seq.*
[29] Count Sixteen.

18

The Court agrees with Plaintiffs that whether the class action bars are applicable here is a question "better suited for disposition later in the litigation[,]" as the Court would have to apply Federal Rule of Civil Procedure 23, which is generally inappropriate for a motion to dismiss.  *In re Insulin Pricing Litig.*, 2020 WL 831552, at *6 (D.N.J. Feb. 20, 2020); *see also Sergeants Benevolent Ass'n Health & Welfare Fund v. Activas, PLC*, 2018 WL 7197233, at *52 (S.D.N.Y. Dec. 16, 2018) (same); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., and Prods. Liab. Litig.*, 349 F. Supp. 3d 881, 920 (N.D. Cal. 2018) (same); *Parrish v. Volkswagen Grp. of Am.*, 463 F. Supp. 3d 1043, 1061-62 (C.D. Cal. 2020) (same).

Accordingly, the Court will deny Land Rover's motion to dismiss the UCSPA and CCPA claims.[30]

### d. The Louisiana claim will be dismissed as facially time-barred

Land Rover additionally argues that Plaintiff Gresh's, the Louisiana representative, Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPCPL") claim[31] should be dismissed as untimely.  Mot. at 20.

Under Louisiana law, any action regarding a product's defect that "renders it absolutely useless[] or so inconvenient . . . [that] a buyer would not have purchased that item had he known[,]" is a "redhibition" action.  *Manning v. Scott-Hixson-Hopkins, Inc.*, 605 So.2d 233, 235 (La. Ct. App. 2nd Cir. 1991).  To pursue a redhibition action, the plaintiff must file suit within "one year after the date of sale, or one year from discovery of the defect if the seller . . . knew or is chargeable with knowledge of the defect."  *Id.*  Plaintiff Gresh purchased his vehicle on October 31, 2020, "the windshield cracked 'two to three weeks after taking delivery,' and [he] was charged for a

---

[30] Counts Seven (UCSPA) and Sixteen (CCPA).
[31] Count Nineteen.

replacement . . . in approximately late December 2020." Mot. at 20-21 (quoting FAC ¶¶ 111, 117, 119, 120). Land Rover argues that Plaintiff Gresh's claim is untimely because he did not file suit until June 30, 2022, almost two years later. *Id.* at 21. Conversely, Plaintiffs argue that "Plaintiff Gresh's claim did not accrue when his windshield was first replaced in December 2020," but on June 29, 2022, "when he realized his vehicle suffered from the . . . Defect and gave Land Rover notice of [the] same . . . ." Opp'n at 22 (citing FAC ¶ 121).

The Court agrees with Land Rover that Plaintiff Gresh's claim is time-barred based on the FAC. When a redhibition claim appears time-barred from the face of the complaint, it is the buyer's burden to prove otherwise. *Manning*, 605 So.2d at 235. The FAC states that when Plaintiff Gresh's windshield cracked, he "did not observe anything impact the windshield prior to the crack forming." FAC ¶ 117. Neither the FAC nor Plaintiffs' arguments against dismissal explain how Plaintiff Gresh did not discover the Defect until the same day his counsel gave notice of the Defect to Land Rover. Without allegations explaining Plaintiff Gresh's delayed realization, the Court finds that the FAC shows that his claim began accruing, at the latest, in December 2020 when the dealership told him that the Warranty would not cover the replacement windshield. *Id.* ¶ 120.

Accordingly, the Court will grant Land Rover's motion and dismiss Plaintiff Gresh's LUTPCPL claim without prejudice.[32]

---

[32] Count Nineteen. The Court finds amendment would not be futile if Plaintiff Gresh can sufficiently plead why he did not discover the Defect until a date within the statute of limitations.

*3. Plaintiffs' common law fraudulent concealment claims*

*a. The Economic Loss Doctrine warrants dismissal for the New Jersey, California, Colorado, and Florida claims*

Land Rover additionally argues that Plaintiffs Cerutti's, Guidorizzi's, Richards', and Bishop's[33] common law fraudulent concealment claims[34] should be dismissed. Mot. at 22. Land Rover argues that the economic loss doctrine, which generally precludes plaintiffs from recovering under fraud and other intentional tort claims when the plaintiffs' breach of contract claims are based on the same facts, bars these claims. *Id.* (citing *Cohen v. Subaru of Am., Inc.*, 2022 WL 721307, at *26 (D.N.J. Mar. 10, 2022)).

The Court agrees. In these states, Plaintiffs cannot recover under their fraudulent concealment claims because it is based on the same facts as the breach of express warranty claims: Land Rover's failure to disclose the Defect prior to sale (FAC ¶¶ 174-75, 225, 230), the costs associated with repairing the Defect (*id.* ¶¶ 184, 226, 231), and the diminution in value of their Vehicles because of the Defect (*id.* ¶¶ 184, 231). *See Ponzio*, 447 F. Supp. 3d at 236-38 (California and Florida); *Peters v. Countrywide Home Loans, Inc.*, 2016 WL 2869059, at *5 (D.N.J. May 17, 2016) (New Jersey); *White v. Gen. Motors*, 2022 WL 3597161, at *8 (D. Colo. July 7, 2022) (Colorado).

As Plaintiffs correctly point out, these states provide an exception to the economic loss doctrine for fraud in the inducement, *i.e.*, where a misrepresentation was made that induced the plaintiff into entering the contract. Opp'n at 22-25; *see also Ponzio*, 447 F. Supp. 3d at 236-38; *Peters*, 2016 WL 2869059, at *5; *White*, 2022 WL 3597161, at *8. However, Plaintiffs do not plead fraud in the inducement. *See* FAC ¶¶ 173-188.

---

[33] The New Jersey, California, Colorado, and Florida representatives, respectively.
[34] Count Two.

Accordingly, the Court will grant Land Rover's motion and dismiss Plaintiffs Cerutti's, Guidorizzi's, Richards', and Bishop's fraudulent concealment claims[35] without prejudice.

### c. The Louisiana claim will be dismissed as facially time-barred

Land Rover additionally argues that Plaintiff Gresh's, the Louisiana representative, fraudulent concealment claim[36] must be dismissed for the same reasons his statutory fraud claim was dismissed: it is time-barred. Mot. at 25. Plaintiffs put forth the same arguments in response. Opp'n at 26. For the same reasons as above, the fraudulent concealment claim is time-barred.[37] *See, e.g.*, *Manning*, 605 So.2d at 235.

Accordingly, the Court will grant Land Rover's motion and dismiss Plaintiff Gresh's fraudulent concealment claim[38] without prejudice.

### E. The Unjust Enrichment Claims

### 1. It is too early to address injunctive or other equitable relief

Land Rover argues that Plaintiffs' common law unjust enrichment claims[39] should be dismissed. Mot. at 15, 36. First, Land Rover argues that for all unjust enrichment claims, Plaintiffs fail to plead there is no adequate remedy at law, which is required for equitable relief. *Id.* at 36. Land Rover also argues that Plaintiffs lack Article III standing to bring these claims. Reply at 15. However, "as a general matter, courts only dismiss *claims*[,] not *remedies*[,] at this early stage." *Opheim*, 2021 WL 2621689, at *15 (emphasis in original) (citing *In re Riddell Concussion Reduction Litig.*, 121 F. Supp. 3d 402, 424-25 (D.N.J. 2015)). Were these claims to survive, the

---

[35] Count Two. Because the Court dismisses Plaintiff Cerutti's, the New Jersey representative, fraudulent concealment claim, the Court will not address Land Rover's other argument for dismissal. *See* Mot. at 24-25.

[36] Count Two.

[37] *See* Section II(D)(2)(d).

[38] Count Two.

[39] Count Three.

Court would "till need to decide, *e.g.*, liability, before the viability of injunctive relief comes into play." *Id.*; *see also Riddell*, 121 F. Supp. 3d 402 ("The court will consider appropriate relief only when liability is established.").  Accordingly, the Court will not address the viability of claims for injunctive or equitable relief[40] and will deny this branch of Land Rover's motion to dismiss.

   *2.   The FAC alleges a sufficiently direct relationship under New Jersey law*

   However, Land Rover additionally argues that Plaintiff Cerutti's claim[41] should be dismissed.  Mot. at 38.  Under New Jersey law, to adequately plead an unjust enrichment claim, the plaintiff must allege that (1) the defendant received a benefit and (2) "retention of that benefit without payment would be unjust."  *Id.* (internal quotations omitted).  As for the first element, because the plaintiff "must confer a benefit on the defendant[,]" courts additionally "'require[] that the plaintiff allege a sufficiently direct relationship with the defendant to support the claim.'"  *Id.* (quoting *Snyder v. Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 724 (D.N.J. 2011)).  Land Rover argues that consumers do not meet the "direct relationship" requirement when they purchase from a third party, such as a retailer, because the benefit is conferred onto the retailer, not the manufacturer.  Mot. at 38 (citing *In re Subaru*, 2021 WL 1207791, at *30).  Because Plaintiff Cerutti concedes he purchased his Class Vehicle from a dealership and not Land Rover, Land Rover argues his claim fails.  *Id.* at 39.  Plaintiffs argue that what constitutes a "direct relationship" is not the bright-line rule Land Rover proposes.  *See* Opp'n at 38 (arguing that courts can find a direct relationship even when a product is purchased through a third party).

   The Court agrees with Plaintiffs.  Some courts in this District have applied the bright-line rule proposed by Land Rover.  *See, e.g.*, *In re Subaru*, 2021 WL 1207791, at *30; *Snyder*, 792 F.

---

[40] Count Three.
[41] Count Three.

Supp. 2d at 724.  However, more recently, courts in this District have found that what constitutes a sufficiently "direct relationship" "depend[s] heavily on the facts of the individual case," and rather than a bright-line rule, "the key evaluative criterion is whether the relationship would create a reasonable expectation of benefit between the parties."  *DeFrank v. Samsung Elecs. Am., Inc.*, 2020 WL 6269277, at *23 (D.N.J. Oct. 26, 2020) (internal quotation marks omitted) (citing *Stewart v. Beam Global Spirits & Wine*, 877 F. Supp. 2d 192, 197 (D.N.J. 2012); *Castro v. NYT Television*, 370 N.J. Super. 282, 300 (App. Div. 2004)) (examining New Jersey law).  These same courts have also carved out an exception to the "direct relationship" requirement, finding that a plaintiff need not allege a direct relationship if the plaintiff sufficiently alleges that "the defendant is not merely an innocent third party . . . ."  *Id.* at *24; *see also, e.g.*, *Bullard v. Jaguar Land Rover Auto. PLC*, 2023 WL 4845873, at *11 (D.N.J. July 28, 2023) (same); *Flynn-Murphy v. Jaguar Land Rover North Am., LLC*, 2021 WL 5448716, at *9 (D.N.J. Nov. 19, 2021) (same).  Thus, when, like here, Plaintiffs sufficiently alleged that Land Rover "failed to disclose a defect,"[42] they "have made out a claim for unjust enrichment."  *DeFrank*, 2020 WL 6269277, at *25.

Accordingly, the Court will deny Land Rover's motion to dismiss Plaintiff Cerutti's unjust enrichment claim.[43]

---

[42] *See* Section II(C) (finding that the FAC sufficiently alleges the existence of a defect); Section II(D)(1) (finding that the FAC sufficiently alleges Land Rover had pre-sale knowledge of the Defect).

[43] Count Two.

### F.  The Express Warranty Claims

*1.  Plaintiff Gresh withdraws the Louisiana express warranty claim and the Court will grant leave to amend*

Plaintiff Gresh withdraws his claim for breach of express warranty under Louisiana law pursuant to La. Rev. Stat. Ann. §§ 9:2800.53(6), 2800.58,[44] and seeks leave to amend the FAC to allege a breach of express warranty pursuant to La. Civ. Code Ann. Art. 2520, *et seq.*, Louisiana's redhibition statute, because in Louisiana, "'damages for breach of express warranty in a sales contract, unlike other contractual breaches, are found in redhibition.'"  Opp'n at 30 (quoting *Manning v. Scott-Hixson-Hopkins, Inc.*, 605 So.2d 233, 235 (La. App. 2nd Cir. 1992)).  Land Rover argues that "amendment would be futile" because "any new redhibitory claim would be time-barred" for the same reasons previously discussed.  Reply at 12.

Courts "should freely give leave [to amend a complaint] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Land Rover makes no arguments why amendment would be unjust, and the Court has already found that amendment would not be futile.[45]  Accordingly, the Court will dismiss the Louisiana claim for breach of express warranty and grant leave to amend the FAC as to this claim.[46]

*2.  The remaining express warranty claims sufficiently state a claim*

Land Rover argues that Plaintiffs' remaining express warranty claims[47] should be dismissed.  Mot. at 26.  First, Land Rover argues that Plaintiffs' claims fail because the Warranty "expressly excludes coverage for damage caused by objects striking the vehicle and damage

---

[44] Count Twenty-One.
[45] *See* Section II(D)(2)(d).
[46] Count Twenty-One.
[47] Counts Six (New Jersey), Eight (Utah), Ten (Florida), Fourteen (California), Fifteen (California), and Eighteen (Colorado).

caused by use and/or the environment, such as chips and scratches[,] and dings or dents." *Id.* at 27 (cleaned up). Plaintiffs' dealers determined outside forces caused the windshield damages. *Id.* Armed with this "obvious explanation[,]" Land Rover concludes there is no plausible inference that the Warranty was breached because Plaintiffs' repairs fall squarely outside of the Warranty's ambit. *Id.* at 28.

The Court disagrees. At the motion to dismiss stage, it is the FAC's characterization of events that the Court must draw every reasonable inference in favor of—not the dealerships. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also Sanchez v. Kia Motors Am., Inc.*, 2021 WL 4816834, at *10 (C.D. Cal. Aug. 9, 2021) (When deciding "a motion on the pleadings, . . . the Court will not give weight to the dealerships' determination" that the windshield damages were "caused by an outside force."). The FAC plausibly pleads that the Defect caused the windshield damages, not outside forces. As for Plaintiffs who observed a "minor impact" from something like "a small pebble," the FAC states "the windshields do not fail because of the pebble but due to the defective nature of the windshields." FAC ¶ 126; *see also* Opp'n at 27-28 (citing FAC ¶¶ 76, 88, 105) (Based on Plaintiffs' prior experiences driving other vehicles, "a small impact should not have caused the windshield to crack . . . ."). And for Plaintiffs who observed no impact, the Court must disregard the dealerships' contrary conclusions. *See Sanchez*, 2021 WL 4816834, at *10 (considering only the complaint's allegations that some plaintiffs "observed no impact on the windshield at all" and others "observed a small pebble hit the windshield, causing a small chip that expanded into a large crack overnight").

Second, Land Rover argues the express warranty claims must be dismissed because the Warranty "extends only to defects in factory-supplied materials or factory workmanship" and "does not include design defects." Mot. at 29 (internal quotation marks omitted). Inherent in this

argument is Land Rover's argument that Plaintiffs allege a design defect.  *Id.*  Plaintiffs disagree with this characterization and argue that they allege a manufacturing defect, *i.e.*, a defect in the materials or workmanship of the Vehicles.  Opp'n at 29.

A materials defect "is a failing in the quality of the actual substances used to make a product," and a workmanship defect "is a deficiency in the execution of a product's assembly or construction. . . ."  *Coba v. Ford Motor Co.*, 932 F.3d 114, 121 (3d Cir. 2019).  Design defects, on the other hand, "arise in the plans for a product's creation[,]" making them "inherent in the product's intended operation and construction."  *Id.*  Land Rover argues that the FAC alleges a design defect because the "scale of Plaintiffs' claims" encompasses "windshields in all 2020-2022 Land Rover Defenders[,]" rather than Plaintiffs' particular Vehicles.  Mot. at 29.  Plaintiffs argue that the FAC alleges a manufacturing defect by stating that the Defect "'occurs due to either deficient materials used to make the windshield itself'" and/or "'as a result of the manner in which the windshields were made and assembled . . . .'"  Opp'n at 29-30 (quoting FAC ¶¶ 3, 136).

The Court refrains from determining which type of defect the FAC pleads.  "At the pleading stage, . . . the distinction between defect in design and defect in materials or workmanship is a matter of semantics, and [when] sufficient facts are alleged to assert both, the defendant's characterization of the nature of the claim pre-discovery should not control whether the complaint survives."  *Alin v. Am. Honda Motor Co., Inc.*, 2010 WL 1372308, at *6 (D.N.J. Mar. 31, 2010); *see also In re Volkswagen Timing Chain Prod. Liab. Lit.*, 2017 WL 1902160, at *12 (D.N.J. May 8, 2017) ("Courts within this district have refused to apply a distinction between" these defects on a motion to dismiss.).

Accordingly, the Court will deny Land Rover's motion to dismiss the remaining express warranty claims.[48]

### G. Plaintiffs Adequately Plead the Implied Warranty of Merchantability Claims

Land Rover argues that Plaintiffs' implied warranty of merchantability claims[49] should be dismissed. Mot. at 31. First, Land Rover argues that the Warranty, which is an express warranty, displaces any inconsistent implied warranty. *Id.* Essentially, because Land Rover "expressly warrants that it will correct defects in materials or workmanship, not . . . design defects[,]" and will not cover damage from outside sources, the scope of any implied warranty is limited to the same. *Id.* at 32. However, the Court has already rejected these arguments in previously determining that (1) Plaintiffs plausibly plead their express warranty claims and (2) the Court will refrain from distinguishing between defects at this stage.[50] Thus, these arguments are inapplicable to the Court's analysis.

Next, Land Rover argues that Plaintiffs fail to allege facts showing that the Vehicles are unmerchantable. *Id.* at 33. "A cracked window from a foreign object is a regular occurrence" and nothing "other than a typical (but frustrating) aspect of vehicle ownership . . . ." *Id.* "[A]ny other holding [than dismissal] would be a blanket conclusion that all vehicles are necessarily unmerchantable." *Id.* at 34. Simply put: "Windshields crack." Reply at 12. However, Plaintiffs argue that Land Rover wrongly applies its own *c'est la vie* standard. Opp'n at 32. Instead, the relevant inquiry is whether the FAC plausibly alleges that the Vehicles fell below the commercial standards of cars. Opp'n at 32-33.

---

[48] Counts Six (New Jersey), Eight (Utah), Ten (Florida), Fourteen (California), Fifteen (California), and Eighteen (Colorado).

[49] Counts Five (New Jersey), Thirteen (California), Seventeen (Colorado), and Twenty (Louisiana).

[50] *See* Section II(F)(2).

The Court agrees with Plaintiffs. "An implied warranty of merchantability protects buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose . . . ." *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 598 (D.N.J. 2016) (cleaned up). For cars, "'the implied warranty of merchantability is simply a guarantee that they will operate in a safe condition and [be] substantially free of defects . . . .'" *Henderson v. Volvo Cars of North Am., LLC*, 2010 WL 2925913, at *9 (D.N.J. July 21, 2010) (quoting *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 297 (4th Cir. 1989), *cert. denied*, 495 U.S. 9-4, 910 (1990)); *see also Nelson v. Nissan North Am., Inc.*, 894 F. Supp. 2d 558, 567 (D.N.J. 2012) (same).

The FAC sufficiently alleges that the Defect makes the Vehicles unsafe. Cracked windshields can impair a driver's view or distract them. *See* FAC ¶ 8. This, in turn, creates a safety risk for any passengers, pedestrians, or fellow drivers. *Id.* ¶ 10. Additionally, the FAC alleges that the Defect could cause the windshield to spontaneously shatter, injuring those in its vicinity, or decreasing the functionality of the windshield in a collision. *Id.* ¶¶ 10-12. Land Rover's argument that denying dismissal of these claims would render any car unmerchantable is unpersuasive. The alleged Defect is not simply that the windshields crack, it is the ease with which they crack that fall short of commercial standards.

Accordingly, the Court will deny Land Rover's motion to dismiss the implied warranty of merchantability claims [51] on this basis. However, Land Rover additionally argues that the Louisiana implied warranty of merchantability claim [52] is time-barred due to the one-year

---

[51] Counts Five (New Jersey), Thirteen (California), Seventeen (Colorado), and Twenty (Louisiana).
[52] Count Twenty.

29

prescription period.  *See* Mot. at 34.  The Court's analysis remains the same.[53]  Accordingly, the Court will dismiss the Louisiana implied warranty claim without prejudice.[54]

### H.  Any Remaining Non-UCSPA Claims Seeking Damages are Preempted

Lastly, Land Rover argues that Plaintiff Rains' state law claims for damages that are not based on the UCSPA[55] must be dismissed.  Mot. at 39-40.  Specifically, Land Rover argues that pursuant to Utah Code Ann. Sec. 13-11-23 ("Section 23"), the UCSPA "is the exclusive [damages] remedy available to a class of consumers,'" which thus "preempts any other associated class claims'" based on Utah law.  *Id.* at 40 (quoting *Johnson v. Blendtec, Inc.*, 500 F. Supp. 3d 1271, 1287-88 (D. Utah Nov. 16, 2020)).  Plaintiffs argue that for the same reasons as above (*see* Section II(D)(2)(d)), the Court should not address Plaintiff Rains' ability to pursue Utah claims on a class basis at this stage of litigation.  Opp'n at 39 (citing Utah Code. Ann. Sec. 13-11-19 ("Section 19")).  In response, Land Rover argues the two analyses are distinguishable: Section 19 functions like a class action bar and provides the three circumstances where a class action can proceed under the UCSPA, whereas Section 23 provides what remedies, or lack thereof, are available when a plaintiff pursues a UCSPA class claim for damages.  *See* Reply at 15.

The Court agrees with Land Rover.  The case law on this issue is scarce; indeed, *Blendtec* was the first court to address this issue.  *See* 500 F. Supp. 3d at 1287.  Plaintiffs point to no case law suggesting that the Court should treat preemption claims like Section 23 like class action bars in Section 19.  *See* Opp'n at 39.  The Court therefore finds no reason to depart from the seminal ruling on this narrow issue.

---

[53] *See* Section (II)(D)(2)(d).
[54] Count Twenty.
[55] Counts Two (Fraudulent Concealment), Three (Unjust Enrichment), and Eight (Express Warranty).

Accordingly, the Court will grant Land Rover's motion and dismiss Plaintiff Rain's non-UCSPA claims[56] to the extent they seek class damages. [57]

## IV.    CONCLUSION

For the reasons stated herein, the Court will **GRANT in part** and **DENY in part** Land Rover's motion to dismiss.  All dismissals are without prejudice.  In summary, the Court will:

- **DISMISS** Count One (MMWA).

- **DISMISS** Counts Two (Fraudulent Concealment) and Three (Unjust Enrichment) to the extent they are brought on behalf of a nationwide class.

- **DISMISS** Count Two (Fraudulent Concealment) under New Jersey, California, Colorado, Florida, and Louisiana law.

- **DISMISS** Counts Two (Fraudulent Concealment), Three (Unjust Enrichment), and Eight (Express Warranty) under Utah law to the extent they seek class damages.

- **DISMISS** Count Twenty-One (Louisiana Express Warranty) and **GRANT** leave to amend to allege a claim pursuant to La. Civ. Code Ann. Art. 2520, *et seq.*

An appropriate Order accompanies this Opinion.  Plaintiffs will have 30 days from the entry of the Order to file an amended complaint.

Dated: September 26, 2023

_Evelyn Padin_

Evelyn Padin, U.S.D.J.

---

[56] Counts Two (Fraudulent Concealment), Three (Unjust Enrichment), and Eight (Express Warranty).

[57] *Blendtec* permits these claims to proceed to the extent they seek equitable relief and/or individual damages.  *See* 500 F. Supp. 3d at 1288 ("[T]he UCSPA does not restrict class claims for injunctive or declaratory relief, or individual claims for damages, injunctive relief, or declaratory relief.").