# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| Jason Rains, David Cerutti, Paige Bishop, Carlos Guidorizzi, Heather Richards, and Brian Gresh, *on behalf of themselves and all others similarly situated*, | : : : : : | Civil Action No.: 2:22-cv-04370-EP-JSA |
| Plaintiffs, v. | : : : : | **SECOND AMENDED CLASS ACTION COMPLAINT** |
| Jaguar Land Rover North America, LLC, | : : : | |
| Defendant. | : : | |

Plaintiffs, Jason Rains, David Cerutti, Paige Bishop, Carlos Guidorizzi, Heather Richards, and Brian Gresh ("Plaintiffs"), by undersigned counsel, bring the following Second Amended Class Action Complaint against Jaguar Land Rover North America, LLC, and allege, on their own behalf and on behalf of all those similarly situated, as follows:

## <u>INTRODUCTION</u>

1. Plaintiffs bring this lawsuit on behalf of themselves and proposed classes of past and present owners and lessees of defective 2020-2022 Land Rover Defender vehicles (collectively the "Class Vehicles") marketed, distributed, sold, warranted, and serviced by Defendant Jaguar Land Rover North America, LLC ("Defendant" or "Land Rover").

2. Plaintiffs and the Classes were damaged because the Class Vehicles contain defective windshields.

3. Beginning as early as 2019 Land Rover knew that the Class Vehicles contain one or more defects in the way the vehicles are manufactured and/or made that can cause the windshield to crack, chip and/or fracture (the "Windshield Defect" or the "Defect"). Upon

information and belief, the Windshield Defect occurs due to either deficient materials used to make the windshield itself and/or a deficiency in the structure of the Class Vehicles.

4.     Class Vehicle owners report that their windshields failed for no reason at all. Others have reported windshield failure as a result of circumstances that would not cause a non-defective windshield to fail, such as a very slight impact.

5.     Land Rover, however, has refused to repair or replace the defective windshields in the Class Vehicle under Land Rover's warranty, requiring that Class Vehicle owners pay hundreds or thousands of dollars to repair the Defect – even where the Defect occurs nearly immediately after Class Vehicle owners take possession of their vehicles.

6.     In addition, the replacement windshields provided by Defendant (which Class Vehicle owners must pay for out-of-pocket) are also defective and as a result, Class Vehicle owners often must repeatedly replace their windshields:

- NHTSA Complaint No. 11439152, November 3, 2021 (Incident Date May 29, 2021): 2 cracked windshields, car has only 15K miles- TONS of Defender owners on FB groups and forums same- some one 4th and 5th windshields- current wait to new ones from UK is 2-4 months. […]

7.     Further, the Windshield Defect can and often does manifest immediately after Class Members take ownership of the vehicles and Class Vehicle have complained that they experienced the Windshield Defect within weeks of acquiring their vehicles:

- NHTSA Complaint No. 11439215, November 3, 2021 (Incident Date September 21, 2021): My windshield broke in only owning this car **30 days** I hear from other people that this is there 3 time replacement. I think this is a design issues and should be looked into.

- NHTSA Complaint No. 11453301, February 21, 2022 (Incident Date February 17, 2022): Easily cracked windshield. **Less than 30 days owned** and a small pebble cracked my windshield.

- NHTSA Complaint No. 11439215, March 20, 2022 (Incident Date April 1, 2021): **Shortly after buying the car** a small people hit the windshield while driving on the highway and broke the windshield right in the eyesight of the driver side. It was a little larger than a quarter in size and took 3 months for replacement due to back order. 2 weeks after the replacement the windshield spontaneously cracked while driving from the middle base of the windshield up and towards the passenger side about 20 inches long. Nothing hit the car, it just cracked. No heater or defrost was on. It took 6 months for replacement due to Land Rover ordering the wrong windshield and back orders. During this time the windshield got 3 more chips from pebbles/small rocks while driving. 2 weeks after this replacement a small rock hit the windshield on the driver side and chipped it about the size of a nickel. I am getting this filled tomorrow. This is clearly a defect with the windshield as I have had maybe 2 broken windshields in my life up to this point.

8.    The Windshield Defect poses an extreme safety hazard to drivers, passengers, and pedestrians because a spontaneously shattering or cracking windshield can impair the driver's view, distract the driver, and result in dislodged glass that can injure drivers, passengers and pedestrians. As set forth below the cracks on the Plaintiffs' and other Class Vehicle owners' respective windshields were significant andspread across several feet of the windshields.

9.    Given the inherent safety risks associated with driving a vehicle with a cracked windshield, many states make it illegal to operate a vehicle with a cracked windshield where the windshield is defective such that it impairs the driver's vision. *See, e.g.*,

- *Florida*:

  http://www.leg.state.fl.us/statutes/index.cfm?App_mode=Display_Statute&Search_String=&URL=0300-0399/0316/Sections/0316.2952.html (prohibiting devices or items that might obstruct driver's clear view of the road) (last visited Nov. 21, 2022);

- *California*: California Vehicle Code 26710 ("It is unlawful to operate any motor vehicle upon a highway when the windshield or rear window is in such a

defective condition as to impair the driver's vision either to the front or rear.");

https://www.revisor.mn.gov/statutes/cite/169.71 (""A person shall not drive or

operate any motor vehicle with: (1) a windshield cracked or discolored to an

extent to limit or obstruct proper vision") (last visited Jun. 28, 2022);

- *Colorado*: http://www.lpdirect.net/casb/crs/42-4-227.html (prohibits driving a

  motor vehicle with anything that obstructs driver's view of the road) (last visited

  Nov. 21, 2022);

- *Louisiana*:

  https://legis.la.gov/Legis/Law.aspx?d=88051#:~:text=(a)%20In%20the%20eight

  %20and,excess%20of%20one%2Dhalf%20inch (outlawing driving with cracked

  to chipped windshields) (last visited Nov. 21, 2022);

- *New Jersey*: https://law.justia.com/codes/new-jersey/2018/title-39/chapter-

  3/section-39-3-74/ (New Jersey law prohibiting drivers to operate vehicles with

  obstructed view of the road) (last visited Jun. 28, 2022);

- *Utah*: https://le.utah.gov/xcode/Title41/Chapter6A/41-6a-S1635.html?v=C41-6a-

  S1635_2022050420220504 (Utah law that prohibits damage, scratches or

  discoloration on windshields if it interferes with driver's clear view of the road)

  (last visited Jun. 28, 2022);

- *Texas*: https://www.dps.texas.gov/section/vehicle-inspection/faq/faq-items-

  inspection (Texas vehicles may fail a state required inspection if "a damaged

  windshield creates a significant visibility issue for the driver.") (last visited Jun.

  28, 2022).

10.    Moreover, in the event a vehicle is involved in a collision, an intact windshield assists in transferring the force of a front-end impact down to the chassis, which reduces the effect of the impact felt inside the vehicle and helps protect the passengers. However, where a vehicle's windshield is cracked and then subsequently shatters during a collision, the vehicle occupants are at greater risk of sustaining injuries.

11.    In addition, the windshield is a vital component of a vehicle's safety restraint system, which also includes airbags and seatbelts. These safety features, including the windshield, are all part of a safety network.  Each individual component of this network is dependent on the others functioning properly. Thus, if there is a compromise or weakness in just one aspect of the network, the likelihood of other parts not working properly is increased.  All components of a vehicle's safety restraint system are designed to work together to keep vehicle occupants within the relative safety of the passenger compartment during collision or roll over.

12.    To that end, the windshield provides support that a passenger-side airbag needs to deploy properly.  If the windshield is compromised, the airbag may be useless in a collision. Similarly, the windshield provides much of the roof support for most vehicles.  As a result, the windshield is a crucial component in preserving the structural integrity of the vehicle's passenger compartment during roll-overs in that the windshield supports the roof, thereby keeping the roof from collapsing and crushing the driver and passengers.

13.    In addition to these safety issues, the cost to repair the Windshield Defect can be exorbitant – more than $2,000 for a replacement windshield – requiring consumers to pay significant sums over the life of their Class Vehicles.

14.    As set forth below, Defendant knew the Class Vehicles were defective and not fit for their intended purpose of providing consumers with safe and reliable transportation at the

time of the sale and thereafter. Defendant has actively concealed the true nature and extent of the Windshield Defect from Plaintiffs and the other Class Members, and failed to disclose it to them, at the time of purchase or lease and thereafter.

15. Had Plaintiffs and the Class Members known about the Windshield Defect, they would not have purchased the Class Vehicles or would have paid substantially less for them.

16. Despite being notified of the Windshield Defect from, among other things, pre-production testing, numerous consumer complaints (both to NHTSA and on Defender-enthusiast websites and Defender Facebook Groups), warranty data, and dealership repair orders, Defendant has not recalled the Class Vehicles to repair the Windshield Defect, has not issued bulletins to its dealerships acknowledging that the Class Vehicles suffer from the Windshield Defect, has not offered its customers a suitable repair or non-defective replacement windshield free of charge, and has not offered to reimburse all Class Vehicle owners and leaseholders the costs they incurred relating to diagnosing and repairing the Windshield Defect.

17. Land Rover knew of and concealed the Windshield Defect that is contained in every Class Vehicle, along with the attendant dangerous safety problems and associated repair costs, from Plaintiffs and the other Class Members both at the time of sale and repair and thereafter.

18. As a result of their reliance on Defendant's omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their Class Vehicles.

19. Plaintiffs have each given Land Rover a reasonable opportunity to cure the Windshield Defect, but Land Rover has refused to cure the defect or otherwise has been unable to do so within a reasonable time.

20.     Land Rover's conduct is in violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.,* the Utah Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq.*, Florida Deceptive and Unfair Trade Practices Act, F.S.A. § 501.201, *et seq.,* California Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq.*, California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*, and constitutes fraudulent concealment, unjust enrichment, and a breach of express and implied warranties.

21.     Land Rover has and will continue to benefit from its unlawful conduct – by selling more vehicles, at a higher price, and avoiding warranty obligations – while consumers are harmed at the point of sale as their vehicles continue to suffer from the unremedied Windshield Defect.

22.     To remedy Land Rover's unlawful conduct, Plaintiffs, on behalf of the proposed class members, seek damages and restitution from Land Rover, as well as notification to class members about the defect.

## **PARTIES**

23.     Plaintiff Jason Rains ("Mr. Rains") is an adult individual residing in Phoenix, Arizona.

24.     Plaintiff David Cerutti ("Mr. Cerutti") is an adult individual residing in Tenafly, New Jersey.

25.     Plaintiff Paige Bishop ("Ms. Bishop") is an adult individual residing in Green Cove Springs, Florida.

26.     Plaintiff Carlos Guidorizzi ("Mr. Guidorizzi") is an adult individual residing in Marina Del Ray, California.

27.    Plaintiff Heather Richards ("Ms. Richards") is an adult individual residing in Colorado Springs, Colorado.

28.    Plaintiff Brian Gresh ("Mr. Gresh") is an adult individual residing in Calhoun, Louisiana.

29.    Defendant Jaguar Land Rover North America, LLC is an automobile company that distributes, markets, services, warrants, repairs, sells and leases passenger vehicles – designed and manufactured by Jaguar Land Rover Automotive PLC ("JLR PLC") and Jaguar Land Rover Limited ("JLR LTD," together "JLR UK"), including the Class Vehicles – in North America.  It maintains its corporate headquarters and principal place of business at 100 Jaguar Land Rover Way, Mahwah, New Jersey 07495.

30.    At all relevant times, Defendant was engaged in the business of marketing, supplying, and selling motor vehicles accompanied by written warranties to the public at large through a system of authorized dealerships.

31.    At all times herein mentioned,  Land Rover reviews and analyzes warranty data submitted by Land Rover's dealerships and authorized technicians in order to identify defect trends in vehicles. Upon information and belief,  Land Rover dictates that when a repair is made under warranty (or warranty coverage is requested), service centers must provide Defendant with detailed documentation of the problem and the fix that describes the complaint, cause, and correction, and also save the broken part in the event Defendant decides to audit the dealership. Land Rover uses this information to determine whether particular repairs are covered by an applicable Land Rover warranty or are indicative of a pervasive defect.

32.    Land Rover also developed the marketing materials to which Plaintiffs and the Classes were exposed, owner's manuals, informational brochures, warranty booklets, and

information included in maintenance recommendations and/or schedules for the Class Vehicles, all of which fail to disclose the Windshield Defect.

## JURISDICTION AND VENUE

33.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff Rains and Class Members, and Defendant are citizens of different states.

34.     Personal jurisdiction and venue are proper in this District as Defendant is headquartered in this District.

## FACTUAL ALLEGATIONS APPLICABLE TO INDIVIDUAL PLAINTIFFS

**I.    Jason Rains**

35.     On December 29, 2021, Mr. Rains, a resident of Arizona, purchased a new 2022 Land Rover Defender, Vehicle Identification Number SALE37RU3N2094827 (hereafter the "Rains Vehicle") from Jaguar Land Rover Lehi (hereafter "Jaguar Land Rover Lehi"), an authorized Land Rover dealership located in Lehi, Utah.

36.     Passenger safety and reliability were important factors to Mr. Rains' decision to purchase the vehicle. Prior to purchasing the 2022 Land Rover Defender, Mr. Rains researched the vehicle by looking at the vehicle's specifications and features on Land Rover's website, where the Land Rover Defender was described as durable and tough, and was depicted driving in the desert and across sand dunes, suggesting rugged reliability and capability as an offroad vehicle. Based on Land Rover's representations, Mr. Rains was led to believe that the 2022 Land

9

Rover Defender was, among other things, a safe, reliable, and high-quality vehicle, and Land Rover's representations induced him to purchase the vehicle.

37.    Prior to the purchase, Jaguar Land Rover Lehi assured Mr. Rains that the Rains Vehicle was accompanied by Jaguar Land Rover North America, LLC's New Vehicle Limited Warranty.

38.    In its New Vehicle Limited Warranty Land Rover promised to "correct defects in factory-supplied materials or factory workmanship" without charge within 4 years or 50,000 miles in service, whichever occurs first.

39.    Despite Mr. Rains' research prior to purchasing the vehicle, neither Land Rover nor the selling dealership ever disclosed at the time of purchase that the 2022 Land Rover Defender contained the Windshield Defect. Indeed, Land Rover concealed this information from consumers, and Mr. Rains was not aware of, and did not have any reason to anticipate, that his vehicle was afflicted by the Windshield Defect when he purchased the vehicle.

40.    Land Rover's omissions were material to Mr. Rains. If Land Rover had adequately disclosed these facts before Mr. Rains purchased the vehicle, he would have learned of the concealed information and would not have bought the vehicle had he known the vehicle suffered from the Windshield Defect.

41.    On June 21, 2022, as the Rains Vehicle was going though a car wash with Mr. Rains inside the vehicle, the windshield made a loud popping noise and split from the center down, forming a crack about 14 inches long. Ms. Rains did not observe anything impact the windshield as the vehicle was proceeding through a car wash. Below is a photograph of the crack:



42.     On June 22, 2022, Mr. Rains took his vehicle to Land Rover of Scottsdale, an authorized Land Rover dealership located in Phoenix, Arizona, informed the dealership about the circumstances of the windshield crack, that he believes the crack was the result of a defect with the windshield itself, and sought a repair or replacement windshield.  In response, the dealership declined to perform the repair under Land Rover's warranty.

43.     The same day, on June 22, 2022, Mr. Rains called Land Rover customer care line and advised it that his vehicle suffered from the Windshield Defect and that he was denied a replacement windshield under Land Rover's warranty. In response, Land Rover also declined to perform the repair under Land Rover's warranty.

44.     On June 28, 2022, Mr. Rains, through his counsel, followed up by a letter to Land Rover advising it that the Rains Vehicle suffered from the Windshield Defect and that Mr. Rains was denied a replacement windshield under Land Rover's warranty.

11

45.    The windshield crack impaired Mr. Rains' visibility out of the vehicle because when he drove his vehicle during certain hours of the day sunlight reflected off the crack and created a significant glare which made it difficult for Mr. Rains to see through his windshield while driving.

46.    Mr. Rains purchased a third-party policy that covers up to $5,000.00 of windshield replacements over the life of the vehicle. Mr. Rains has already used approximately $2,000.00 of that policy. Additionally, Mr. Rains was informed the new windshield calibration costs about $600.00. Further, subsequent to windshield replacement, Mr. Rains paid money to fill in a new windshield chip that was caused as a result of the Windshield Defect.

47.    Moreover, concerned how easily the windshield in this vehicle can chip or crack, Mr. Rains avoids driving his vehicle on the highway when possible.

48.    At all times, Mr. Rains has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**II.    David Cerutti**

49.    On February 9, 2022, Mr. Cerutti purchased a new 2022 Land Rover Defender, Vehicle Identification Number SALEJ7RX9N2100520 (hereafter the "Cerutti Vehicle") from Land Rover of Englewood (hereafter "Land Rover of Englewood"), an authorized Land Rover dealership located in Englewood, New Jersey.

50.    Mr. Cerutti paid $67,420.00, plus taxes, fees, and other charges, for the Cerutti Vehicle.

51.    Passenger safety and reliability were important factors to Mr. Cerutti's decision to purchase the vehicle. Prior to purchasing the 2022 Land Rover Defender, Mr. Cerutti researched the vehicle by looking at the vehicle's specifications and features on Land Rover's website

where the Land Rover Defender was described as durable and tough. Based on Land Rover's representations, Mr. Cerutti was led to believe that the 2022 Land Rover Defender was, among other things, a safe, reliable, and high-quality vehicle, and Land Rover's representations induced him to purchase the vehicle.

52.     Prior to the purchase, Land Rover of Englewood assured Mr. Cerutti that the Cerutti Vehicle was accompanied by Jaguar Land Rover North America, LLC's New Vehicle Limited Warranty.

53.     In its New Vehicle Limited Warranty Land Rover promised to "correct defects in factory-supplied materials or factory workmanship" without charge within 4 years or 50,000 miles in service, whichever occurs first.

54.     Despite Mr. Cerutti's research prior to purchasing the vehicle, neither Land Rover nor the selling dealership ever disclosed at the time of purchase that the 2022 Land Rover Defender contained the Windshield Defect. Indeed, Land Rover concealed this information from consumers, and Mr. Cerutti was not aware of, and did not have any reason to anticipate, that his vehicle was afflicted by the Windshield Defect when he purchased the vehicle.

55.     Land Rover's omissions were material to Mr. Cerutti. If Land Rover had adequately disclosed these facts before Mr. Cerutti purchased the vehicle, he would have learned of the concealed information and would not have bought the vehicle had he known the vehicle suffered from the Windshield Defect.

56.     Approximately three and a half months later, on May 22, 2022, Mr. Cerutti experienced the Windshield Defect when he went out to his car in the morning and observed that his vehicle's windshield had cracked while the Cerutti Vehicle was stationary. The crack ran from the top center of the windshield and down about 6 inches long and then across to passenger

13

side of the vehicle about 14 inches long. Mr. Cerutti did not observe anything impact his vehicle's windshield prior to the crack forming.

57.    On May 25, 2022, Mr. Cerutti took his vehicle to Land Rover of Englewood, informed the dealership about the circumstances of the windshield crack, that there was no observed impact to the windshield, that he believed the crack was the result of a defect with the windshield itself, and sought a repair or replacement windshield.  In response, Land Rover of Englewood claimed that crack must have formed as a result of a pebble impact, even though there were no signs of any impact on the windshield, and declined to perform the repair under Land Rover's warranty.

58.    The same day, on May 25, 2022, Mr. Cerutti called Land Rover's customer care line and advised it that his vehicle suffered from the Windshield Defect and that he was denied a replacement windshield under Land Rover's warranty. In response, Land Rover also declined to perform the repair under Land Rover's warranty.

59.    Land Rover of Englewood quoted Mr. Cerutti about $2,000.00 to replace the windshield in his vehicle.

60.    On June 23, 2022, Mr. Cerutti, through his counsel, followed up by a letter to Land Rover advising it that the Cerutti Vehicle suffered from the Windshield Defect and that Mr. Cerutti was denied a replacement windshield under Land Rover's warranty.

61.    Mr. Cerutti felt unsafe driving the vehicle with the crack in the windshield and felt it was crucial to replace the windshield, fearing serious further damage may occur. Mr. Cerutti has since had the windshield replaced at a cost of $1,996.14; Mr. Cerutti paid a $500.00 deductible and the rest of the cost of repair was covered through his automobile insurance policy.

62.     On April 5, 2023, Mr. Cerutti experienced the Windshield Defect for the second time. That morning Mr. Cerutti went out to his vehicle and observed a chip in the windshield. Mr. Cerutti did not observe anything impact the windshield prior to the chip appearing.

63.     Again, Mr. Cerutti felt unsafe driving the vehicle with the defective windshield and felt it was crucial to replace the windshield, fearing serious further damage may occur. Mr. Cerutti has since had the windshield replaced again at a cost of $1,047.97; Mr. Cerutti paid another $500.00 deductible and the rest of the cost was covered through his automobile insurance policy.

64.     At all times, Mr. Cerutti has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

## III.    Paige Bishop

65.     On January 22, 2021, Ms. Bishop purchased a new 2021 Land Rover Defender, Vehicle Identification Number SALEJ7RX8M2040809 (hereafter the "Bishop Vehicle") from Land Rover of Jacksonville (hereafter "Land Rover of Jacksonville"), an authorized Land Rover dealership located in Jacksonville, Florida.

66.     Passenger safety and reliability were important factors to Ms. Bishop's decision to purchase the vehicle. Prior to purchasing the 2021 Land Rover Defender, Ms. Bishop researched the vehicle by looking at the vehicle's specifications and features on Land Rover's website where the Land Rover Defender was described as durable and tough. Based on Land Rover's representations, Ms. Bishop was led to believe that the 2021 Land Rover Defender was, among other things, a safe, reliable, and high-quality vehicle, and Land Rover's representations induced her to purchase the vehicle.

67. Prior to the purchase, Land Rover of Jacksonville assured Ms. Bishop that the Bishop Vehicle was accompanied by Jaguar Land Rover North America, LLC's New Vehicle Limited Warranty.

68. In its New Vehicle Limited Warranty Land Rover promised to "correct defects in factory-supplied materials or factory workmanship" without charge within 4 years or 50,000 miles in service, whichever occurs first.

69. Despite Ms. Bishop's research prior to purchasing the vehicle, neither Land Rover nor the selling dealership ever disclosed at the time of purchase that the 2021 Land Rover Defender contained the Windshield Defect. Indeed, Land Rover concealed this information from consumers, and Ms. Bishop was not aware of, and did not have any reason to anticipate, that his vehicle was afflicted by the Windshield Defect when he purchased the vehicle.

70. Land Rover's omissions were material to Ms. Bishop. If Land Rover had adequately disclosed these facts before Ms. Bishop purchased the vehicle, she would have learned of the concealed information and would not have bought the vehicle had she known the vehicle suffered from the Windshield Defect.

71. Approximately four months after purchase, on or about May 26, 2021, Ms. Bishop experienced the Windshield Defect as she was driving down the interstate highway. A small pebble bounced off the road and hit the windshield, causing a crack to spread across the windshield. The windshield crack grew to the width of two feet, was directly in the driver's line of vision, and was a distraction to Ms. Bishop when driving.

72. Thereafter, Ms. Bishop filed a claim with her automobile insurance carrier and waited for a windshield replacement for three months due to shortage of replacement factory windshields.

73.     During the three months wait Ms. Bishop had no choice but to drive her vehicle with the cracked windshield, which caused her to feel nervous and unsafe out of fear that the windshield crack might continue to grow, or the windshield might collapse.

74.     Shortly after getting her vehicle's windshield replaced in late August 2021, Ms. Bishop took her vehicle to Land Rover of Jacksonville, informed the dealership about the circumstances of the windshield crack, and sought calibration of the windshield.

75.     Then, in September 2021, as Ms. Bishop was driving on the highway, she heard a popping sound followed by a crack spreading across the replacement windshield. Ms. Bishop did not see anything impact the windshield.

76.     Ms. Bishop immediately filed a claim with her automobile insurance carrier and again waited for a replacement windshield for six months.

77.     During the six months period that Ms. Bishop was awaiting yet another replacement windshield, she was forced to drive her vehicle with yet another cracked windshield, and multiple other chips formed, again impairing her vision and causing her to feel unsafe when driving her vehicle.

78.     Six months later, shortly after getting her vehicle's second windshield replaced in late February 2022, Ms. Bishop took her vehicle to Land Rover of Jacksonville, informed the dealership about the circumstances of the windshield crack, and sought calibration of the windshield. Ms. Bishop thought it was unusual for the windshield to crack and chip so easily in her vehicle as she had previously owned other vehicles that experienced windshield impacts from small pebbles, but such impacts did not chip or crack the windshields in those other vehicles.

79.     At this time, the dealership informed Ms. Bishop the repair would not be covered under warranty and there was no recall or a warranty repair available for the Windshield Defect too.

80.     The same week when the windshield was replaced in Ms. Bishop's vehicle for the second time, a crack formed again in the second replacement windshield due to the Windshield Defect. Again, Ms. Bishop did not see anything impact the windshield.

81.     On April 20, 2022, Ms. Bishop, through her counsel, sent a letter to Land Rover advising it that the Bishop Vehicle suffered from the Windshield Defect and that Ms. Bishop was told by the dealership its repair would not be covered under Land Rover's warranty.

82.     On May 16, 2022, Land Rover responded with a refusal to cover windshield repair in Ms. Bishop's vehicle under its warranty.

83.     At all times, Ms. Bishop has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**IV.     Carlos Guidorizzi**

84.     In May 2021, Mr. Guidorizzi purchased a new 2021 Land Rover Defender, Vehicle Identification Number SALEJ7RX6M2055776 (hereafter the "Guidorizzi Vehicle") from Land Rover Van Nuys (hereafter "Land Rover Van Nuys"), an authorized Land Rover dealership located in Van Nuys, California.

85.     Passenger safety and reliability were important factors to Mr. Guidorizzi's decision to purchase the vehicle. Prior to purchasing the 2021 Land Rover Defender, Mr. Guidorizzi researched the vehicle by looking at the vehicle's specifications and features on Land Rover's website where the Land Rover Defender was described as durable and tough, as well as by reviewing the electronic brochure for the 2021 Land Rover Defender on Land Rover's

website. Based on Land Rover's representations, Mr. Guidorizzi was led to believe that the 2021 Land Rover Defender was, among other things, a safe, reliable, and high-quality vehicle, and Land Rover's representations induced him to purchase the vehicle.

86.     Prior to the purchase, Land Rover Van Nuys assured Mr. Guidorizzi that the Guidorizzi Vehicle was accompanied by Jaguar Land Rover North America, LLC's New Vehicle Limited Warranty.

87.     In its New Vehicle Limited Warranty Land Rover promised to "correct defects in factory-supplied materials or factory workmanship" without charge within 4 years or 50,000 miles in service, whichever occurs first.

88.     Despite Mr. Guidorizzi's research prior to purchasing the vehicle, neither Land Rover nor the selling dealership ever disclosed at the time of purchase that the 2021 Land Rover Defender contained the Windshield Defect. Indeed, Land Rover concealed this information from consumers, and Mr. Guidorizzi was not aware of, and did not have any reason to anticipate, that his vehicle was afflicted by the Windshield Defect when he purchased the vehicle.

89.     Land Rover's omissions were material to Mr. Guidorizzi. If Land Rover had adequately disclosed these facts before Mr. Guidorizzi purchased the vehicle, he would have learned of the concealed information and would have paid less for it had he known the vehicle suffered from the Windshield Defect.

90.     In July 2021, Mr. Guidorizzi experienced the Windshield Defect while he was driving when a very small pebble hit the windshield causing it to chip, and a crack formed instantly from the chip. The crack grew larger over time. Mr. Guidorizzi was surprised that such a small pebble caused such a large crack as he had owned other vehicles that had suffered a small pebble impact that sometimes caused the windshield to chip, but never to crack.

91.     Shortly thereafter, Mr. Guidorizzi took his vehicle to Land Rover Mission Viejo, Land Rover's authorized dealership in Mission Viejo, California (hereinafter "Land Rover Mission Viejo"), informed the dealership about the circumstances of the windshield crack and sought a repair or replacement windshield under Land Rover's warranty. In response, Land Rover Mission Viejo declined to repair or replace the windshield under the Land Rover's warranty.

92.     Mr. Guidorizzi then called Land Rover customer care line and informed it of the circumstances of the crack, but Land Rover too told Mr. Guidorizzi that Land Rover would not repair or replace the windshield under its warranty.

93.     Due to a replacement windshields shortage, Mr. Guidorizzi was required to wait three months for a replacement windshield, leaving him with no choice but to drive with a cracked windshield.

94.     Land Rover Mission Viejo then replaced the windshield in Mr. Guidorizzi's vehicle in September 2021 and charged him approximately $1,800.

95.     Then, in October 2022, the Guidorizzi Vehicle suffered a Windshield Defect the second time when it suddenly cracked as Mr. Guidorizzi was driving, and where Mr. Guidorizzi did not observe anything hitting the windshield.

96.     On November 18, 2022, Mr. Guidorizzi, through his counsel, sent a letter to Land Rover advising it that the Guidorizzi Vehicle suffered from the Windshield Defect and that Mr. Guidorizzi was denied a replacement windshield under Land Rover's warranty.

97.     At all times, Mr. Guidorizzi has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

## V.    Heather Richards

98.    On March 12, 2021, Ms. Richards purchased a new 2020 Land Rover Defender, Vehicle Identification Number SALEJ7EX9L2032996 (hereafter the "Richards Vehicle") from Land Rover Colorado Springs, Inc. (hereafter "Land Rover of Colorado Springs"), an authorized Land Rover dealership located in Colorado Springs, Colorado.

99.    Passenger safety and reliability were important factors to Ms. Richards's decision to purchase the vehicle. Prior to purchasing the 2020 Land Rover Defender, Ms. Richards researched the vehicle by looking at the vehicle's specifications and features on Land Rover's website where the Land Rover Defender was described as durable and tough. In addition, prior to purchasing the 2020 Land Rover Defender Ms. Richards reviewed the 2020 Land Rover vehicle brochures and visited Land Rover of Colorado Springs where she read Land Rover's sticker affixed to that vehicle's window. Based on Land Rover's representations, Ms. Richards was led to believe that the 2020 Land Rover Defender was, among other things, a safe, reliable, and high-quality vehicle, and Land Rover's representations induced her to purchase the vehicle.

100.    Prior to the purchase, Land Rover of Colorado Springs assured Ms. Richards that the Richards Vehicle was accompanied by Jaguar Land Rover North America, LLC's New Vehicle Limited Warranty.

101.    In its New Vehicle Limited Warranty Land Rover promised to "correct defects in factory-supplied materials or factory workmanship" without charge within 4 years or 50,000 miles in service, whichever occurs first.

102.    Despite Ms. Richards's research prior to purchasing the vehicle, neither Land Rover nor the selling dealership ever disclosed at the time of purchase that the 2020 Land Rover Defender contained the Windshield Defect. Indeed, Land Rover concealed this information from

consumers, and Ms. Richards was not aware of, and did not have any reason to anticipate, that his vehicle was afflicted by the Windshield Defect when he purchased the vehicle.

103.    Land Rover's omissions were material to Ms. Richards. If Land Rover had adequately disclosed these facts before Ms. Richards purchased the vehicle, she would have learned of the concealed information and would not have bought the vehicle or would have paid less for it had he known the vehicle suffered from the Windshield Defect.

104.    In approximately December of 2021, Ms. Richards experienced the Windshield Defect when she was driving and heard something hit the windshield followed by a crack spreading across the windshield.

105.    Ms. Richards the filed a claim with her insurance and paid a $250 deductible to replace the windshield.

106.    On September 16, 2022, Ms. Richards experienced the Windshield Defect again. As she was driving, Ms. Richards noticed a small object hit the replacement windshield followed by a crack spreading across the windshield. Ms. Richards later looked but could not locate an impact point on the windshield.

107.    Shortly thereafter, Ms. Richards contacted Land Rover of Colorado Springs and informed the dealership about the circumstances of the windshield crack as she believed there was a defect with the windshield because a small impact should not have caused the windshield to crack. Ms. Richards had previously owned other vehicles that experienced windshield impacts from small pebbles, but such impacts did not chip or crack the windshields in those other vehicles.

108.    In response, Land Rover of Colorado Springs informed Ms. Richards that the Windshield Defect was not covered under the Land Rover's warranty.

109.    On October 7, 2022, Ms. Richards, through her counsel, sent a letter to Land Rover advising it that the Richards Vehicle suffered from the Windshield Defect and that Ms. Richards was denied a replacement windshield under Land Rover's warranty.

110.    On November 11, 2022, Land Rover responded with a refusal to cover windshield repair in Ms. Richards' vehicle under its warranty.

111.    Currently, the windshield remains cracked, unrepaired, and on a backorder. Ms. Richards is left with no choice but to drive her vehicle with the cracked windshield, with the crack impairing the visibility out of the vehicle. The crack extends right across the driver's side of the windshield, and across the line Ms. Richards' sight. At times, the sunlight reflects off the windshield's crack and creates a significant and strong glare across the windshield.

112.    At all times, Ms. Richards has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**VI.    Brian Gresh**

113.    On October 31, 2020, Mr. Gresh purchased a new 2020 Land Rover Defender, Vehicle Identification Number SALEP7EU0L2019607 (hereafter the "Gresh Vehicle") from Holmes European Motors (hereafter "Holmes European Motors"), an authorized Land Rover dealership located in Shreveport, Louisiana.

114.    Passenger safety and reliability were important factors to Mr. Gresh's decision to purchase the vehicle. Prior to purchasing the 2020 Land Rover Defender, Mr. Gresh researched the vehicle by looking at the vehicle's specifications and features on Land Rover's website where 2020 Land Rover was depicted as a durable and rugged off-road vehicle. In addition, prior to purchasing the 2020 Land Rover Defender Mr. Gresh reviewed the 2020 Land Rover Defender manufacturer's brochures that listed such vehicle's specifications and features. Based

23

on Land Rover's representations, Mr. Gresh was led to believe that the 2020 Land Rover Defender was, among other things, a safe, reliable, and high-quality vehicle, and Land Rover's representations induced him to purchase the vehicle.

115.    Prior to the purchase, Holmes European Motors assured Mr. Gresh that the Gresh Vehicle was accompanied by Jaguar Land Rover North America, LLC's New Vehicle Limited Warranty.

116.    In its New Vehicle Limited Warranty Land Rover promised to "correct defects in factory-supplied materials or factory workmanship" without charge within 4 years or 50,000 miles in service, whichever occurs first.

117.    Despite Mr. Gresh's research prior to purchasing the vehicle, neither Land Rover nor the selling dealership ever disclosed at the time of purchase that the 2020 Land Rover Defender contained the Windshield Defect. Indeed, Land Rover concealed this information from consumers, and Mr. Gresh was not aware of, and did not have any reason to anticipate, that his vehicle was afflicted by the Windshield Defect when he purchased the vehicle.

118.    Land Rover's omissions were material to Mr. Gresh. If Land Rover had adequately disclosed these facts before Mr. Gresh purchased the vehicle, he would have learned of the concealed information and would have paid less for it had he known the vehicle suffered from the Windshield Defect.

119.    Approximately two to three weeks after taking delivery of his vehicle, Mr. Gresh experienced the Windshield Defect in his car while he was driving on the highway when the windshield suddenly cracked. Mr. Gresh did not observe anything impact the windshield prior to the crack forming.

120.     Shortly thereafter, Mr. Gresh took his vehicle to Holmes European Motors, informed the dealership about the circumstances of the windshield crack, and sought a repair.

121.     However, due to unavailability of replacement windshields, Mr. Gresh was not able to have the windshield replaced until a month after it cracked. While driving with the crack, Mr. Gresh felt unsafe, worried that the windshield would collapse. Additionally, the crack impaired Mr. Gresh's vision while driving as the crack reflected the sun light into Mr. Gresh's line of sight.

122.     Once a replacement windshield became available, Holmes European Motors replaced the windshield in the Gresh Vehicle and charged Mr. Gresh automobile insurance carrier and Mr. Gresh for the repair. However, Holmes European Motors did not perform the windshield replacement under the Land Rover's New Vehicle Limited Warranty.

123.     On June 29, 2022, Mr. Gresh, through his counsel, sent a letter to Land Rover advising it that the Gresh Vehicle suffered from the Windshield Defect and that Land Rover dealership failed to replace the windshield under Land Rover's warranty.

124.     On July 11, 2022, Land Rover responded with a refusal to cover windshield repair in Mr. Gresh's vehicle under its warranty.

125.     At all times, Mr. Gresh has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

### FACTUAL ALLEGATIONS APPLICABLE
### TO ALL PLAINTIFFS AND THE CLASSES

**I.    The Windshield Defect**

126.     After discontinuing its Defender line of Land Rover vehicles in the U.S. market in 1997, Land Rover re-released a fully re-designed Defender in June 2020 with its 2020 Defender model.

127.    Since then, it has sold over thirty thousand 2020-2022 Defender Class Vehicles across the United States.

128.    Land Rover has affirmatively represented that its Defender Class Vehicles are durable and tough. For example, on its website Land Rover stated "[t]he new model represents 70 years of innovation and improvement, honoring the vehicle's history for rugged solidity while thoroughly remaining a Defender for the 21st century."[1]  In addition, on its website Land Rover touted the Defender's durability: "Featuring our toughest materials yet and tested to its very limits. The Defender has been designed for optimum durability."[2] Elsewhere on its website, Land Rover states the Defender is "made for impact," claiming the Class Vehicles' "Unique unibody architecture contributes to the Defender being one of the toughest and strongest vehicles we have ever created."[3]

129.    The Class Vehicles suffer from the Windshield Defect.  Specifically, as a result of the way the vehicles are manufactured and/or made and the use of deficient materials, the Class Vehicles' front windshields are not sufficiently strong and durable for normal driving conditions and their intended use, and the windshields crack, chip and/or fracture for no reason at all and/or under circumstances that would not cause non-defective windshields to similarly fail such as impact from a small pebble.  Accordingly, when Class Vehicle windshields crack and fail following a minor impact from a small pebble, the windshields do not fail because of the pebble

---

[1] https://web.archive.org/web/20200417210155/https://www.landroverusa.com/vehicles/defender/index.html (last visited Oct. 23, 2023).

[2] https://web.archive.org/web/20200923070334/https://www.landroverusa.com/vehicles/defender/index.html (last visited Oct. 23, 2023).

[3] https://web.archive.org/web/20200417210155/https://www.landroverusa.com/vehicles/defender/index.html (last visited Oct. 23, 2023).

but due to the defective nature of the windshields which are not strong or durable enough to handle normal driving conditions.

130.    The Windshield Defect presents a safety hazard that renders the Class Vehicles unreasonably dangerous to consumers due to, *inter alia*, the impact of the Defect on visibility as well as the Class Vehicles' structural integrity, and the potential for injury.

131.    Class Vehicle owners report that where there has been no impact damage or a slight impact from a small pebble, or their vehicles sat stationary, their Class Vehicles windshields cracked, including replacement windshields previously replaced due to Defect:

- NHTSA Complaint No. 11433619, September 20, 2021 (Incident Date September 19, 2021): Problem statement: Windshield Issue: The windshield developed a sudden crack while the vehicle was stationary, with no external impact or action Conditions: stationary, outside temp: 97 deg Impacting: visibility and safety features such as cameras, sensor, and lane departure assist

- NHTSA Complaint No. 11435211, October 2, 2021 (Incident Date August 7, 2021): Driving along the road with no cars around, the windshield made a loud noise and a crack was formed coming from the passenger side A-pillar. The crack of course grew over time. No rock chip. Clearly a defective windshield. The dealer would not replace it under warranty even though it clearly started where a rock could not have chipped it.

- NHTSA Complaint No. 11439152, November 3, 2021 (Incident Date May 29, 2021): 2 cracked windshields, car has only 15K miles- TONS of Defender owners on FB groups and forums same- some one 4th and 5th windshields- current wait to new ones from UK is 2-4 months. Land Rover knows these are defective and won'y admit/recall, just passing this off to customer. A new windshield is $1800 a pop- people getting hit paying high deductible, getting pulled over, poor visibility, some have cracks so large that they can not operate their vehicle. Currently, I am in wait, no ETA for my 3rd new windshield- I have a large crack and 2 small chips from all separate incidents. Huge safety issue, bc cracks interfere with driver assist Dates of Cracks: Car has only 15K miles 1. May 29, 2021 2. August 18, 2021 People on New Defenders Group on Facebook have started survey for owners with the problem - and forums have tons of issues. Imagine all the owners who have only had one crack and just think it's bad luck and don't realize there's an issue?

- NHTSA Complaint No. 11453301, February 21, 2022 (Incident Date February 17, 2022): Easily cracked windshield. Less than 30 days owned and a small pebble cracked my windshield.

- NHTSA Complaint No. 11464909, May 16, 2022 (Incident Date May 14, 2022): For the SECOND time, my windshield cracked in the upper right corner with no impact. The second time, I wasn't even driving! The crack looks nearly identical, even as it runs. I paid for a new windshield the first time because they insisted that a rock hit me, although none of the people in the car ever heard or saw that. This time, I wasn't even driving.

- NHTSA Complaint No. 11470701, June 23, 2022 (Incident Date June 3, 2022): Windshield cracked for no reason. ie no chip caused by rock, etc. Happened while I was driving with no traffic.

132.    Further,  Land Rover refuses to repair or repair or replace the Windshield Defect under its written warranty when given a reasonable opportunity to do so.   Land Rover has not issued any bulletins or instructions to its dealerships regarding the Class Vehicle's windshields' propensity to crack and chip or repairing the same, nor has Land Rover authorized its dealerships to cover Class Vehicle windshield repair or replacement costs under Land Rover's warranty.  In addition, Land Rover has refused to repair or replace the Plaintiffs' windshields under Land Rover's warranty.  Likewise, as detailed in the NHTSA and online complaints reproduced below, other Class Vehicle owners complain that Land Rover dealers charge them out-of-pocket for repairs.

133.    Not only does Land Rover refuse to repair the Windshield Defect under its warranty, but because of how widespread the issue is,  Land Rover often takes months to provide Class Vehicle owners with replacement windshields.  For instance, as set forth above Plaintiffs regularly had to wait months for replacement windshields.  Likewise, Class Vehicle owners have complained to NHTSA of windshield wait times reaching "2-4 months":

- NHTSA Complaint No. 11439152, November 3, 2021 (Incident Date May 29, 2021): 2 cracked windshields, car has only 15K miles- TONS of Defender owners

on FB groups and forums same- some one 4th and 5th windshields- current wait to new ones from UK is 2-4 months. […]

134.    Moreover, on information and belief, when windshield repairs are performed by Defendant's dealers (for charge), defective windshields are merely replaced with similarly defective windshields.  Thus, Plaintiffs and Class Vehicle owners have required multiple replacement windshields:

- NHTSA Complaint No. 11439152, November 3, 2021 (Incident Date May 29, 2021): 2 cracked windshields, car has only 15K miles- TONS of Defender owners on FB groups and forums same- some one 4th and 5th windshields- current wait to new ones from UK is 2-4 months. Land Rover knows these are defective and won'y admit/recall, just passing this off to customer. A new windshield is $1800 a pop- people getting hit paying high deductible, getting pulled over, poor visibility, some have cracks so large that they can not operate their vehicle. Currently, I am in wait, no ETA for my 3rd new windshield- […]

135.    Land Rover had and has a duty to fully disclose the true nature of the Windshield Defect and the associated repair costs to Class Vehicle owners, among other reasons, because the Defect poses an unreasonable safety hazard; because Land Rover had and has exclusive knowledge or access to material facts about the Class Vehicles' front windshield that were and are not known to or reasonably discoverable by Plaintiffs and the other Class Members; and because Land Rover has actively concealed the Windshield Defect from its customers.  Because the windshield contained in each Class Vehicle is defective, each Class Vehicle windshield should be replaced by Land Rover free of charge regardless of whether the windshield has failed, or the facts and circumstances surrounding any failure.

## II.    Land Rover's Knowledge of the Defect

136.    Before Land Rover sold Plaintiffs their Class Vehicles, Land Rover was on notice that the Class Vehicles suffered from the Windshield Defect, however Land Rover failed to disclose the existence of the defect to Plaintiffs or any other Class Vehicle owner.

137.    Land Rover became aware of the Windshield Defect through sources not available to Plaintiffs and Class Members, including, but not limited to, pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to Land Rover's network of dealers and directly to Land Rover, aggregate warranty data compiled from Land Rover's network of dealers, testing conducted by Land Rover in response to consumer complaints, and repair order and parts data received by Land Rover from Land Rover's network of dealers.

138.    On information and belief, during the pre-release process of designing, manufacturing, engineering, and performing durability testing on the Class Vehicles, which would have likely occurred between 2019 and early 2020 before Land Rover began selling the Class Vehicles in June 2020, Land Rover necessarily would have gained comprehensive and exclusive knowledge about the Class Vehicles' windshields: the types and properties of materials used to make them, including their durability and whether those materials would weaken over time regardless of wear and use; the basic engineering principles behind their construction; the forces and stresses the windshields would face; when and how the windshields would fail; and the cumulative and specific impacts on the windshields caused by wear and use, the passage of time, and environmental factors.

139.    An adequate pre-release analysis of the design, engineering, and manufacture of the windshields used for the Class Vehicles would have revealed to Land Rover that as a result of the manner in which the windshields were made and assembled and the materials used, the windshields were insufficiently strong and durable for the intended use. Thus, during the pre-release analysis stage of the Class Vehicles, Land Rover would have known that the windshield installed in Class Vehicles was defective, would crack spontaneously or as a result of minor

impacts that should not have resulted in windshield cracks (such as impact from a small pebble), and would pose a safety risk to owners/lessees and the motoring public.  Despite that such testing on the Class Vehicles revealed the Windshield Defect to Land Rover, Land Rover failed to remedy the manufacturing processes with the Class Vehicles before putting the vehicles into production and selling them to the public.

140.    Upon information and belief, Land Rover also would have known about the Windshield Defect because of the higher-than-expected number of replacement windshields ordered from Land Rover, which should have alerted Land Rover that this was a defective part. Upon information and belief, Land Rover service centers use Land Rover replacement parts that they order directly from Land Rover.  Moreover, as set forth in the consumer complaints below, shortly after Land Rover began selling the Class Vehicle, Class Vehicle windshields were on backorder due to the higher-than-expected number of replacement windshields ordered by Land Rover dealerships.  Therefore, Land Rover would have detailed and accurate data regarding the number and frequency of replacement part orders, including replacement windshields.  The ongoing sales of replacement windshields and the fact that windshields were being ordered at such high rates (and at rates higher than windshields for other Land Rover vehicles) that the parts were on backorder, was known to Land Rover and would have alerted Land Rover that its windshields were defective, failed and cracked significantly more often than non-defective windshields, and posed a safety risk early on.

141.    Land Rover also knew about the Windshield Defect because numerous consumer complaints regarding windshield failure were made directly to Land Rover and its dealerships. The large number of complaints, and the consistency of their descriptions of windshield failure alerted Land Rover to this serious Defect affecting the Class Vehicles.  The full universe of

complaints made directly to Land Rover about the Windshield Defect is information presently in the exclusive custody and control of Land Rover and is not yet available to Plaintiffs prior to discovery. However, upon information and belief, many Class Vehicle owners, including the Plaintiffs, complained directly to Land Rover and Land Rover dealerships and service centers about the repeated windshield failures their Vehicles experienced.

142.    Because the Windshield Defect can and does manifest almost immediately – often within weeks of the Class Vehicles first being driven – Land Rover began receiving notification of the higher-than-expected number of replacement windshields ordered from Land Rover and consumer complaints regarding windshield failure within weeks after Land Rover began selling the Class Vehicles in June 2020.

### III.    The NHTSA Complaints and Online Discussions of the Defect

143.    Upon information and belief, thousands of purchasers and lessees of the Class Vehicles have experienced the Windshield Defect. Given how widespread the issue is and the fact that windshields often crack within weeks of their sale, Class Vehicle owners have been complaining about the Windshield Defect directly to Land Rover since 2020 and have been posting such complaints online since at least early 2021.

144.    Automobile manufacturer and distributors maintain presence and regularly monitor social media for vehicle owners concerns and, upon information and belief, Land Rover maintains presence on and regularly monitors social media for such content too, has done so since it began selling the Class Vehicles, and published social media user guidelines on its website.[4]

---

[4] https://www.landroverusa.com/social-media.html (last visited Jun. 29, 2022).

145.    For instance on www.LandRoverForums.com, a Land Rover vehicle enthusiast website that upon information and belief Land Rover regularly monitors, a January 15, 2021 post written by a Class Vehicle owner noted that they "have a 20 defender P400- the windshield cracked mid Dec, and [they] had a new one on order since then."[5] Other Class Vehicle owners responded that they had near-identical experiences; one owner complained that their "windshield cracked for no reason" and another similarly complained, "My 110 with 7500 miles just cracked last week. No impact, no crazy stuff like putting cold water on hot glass. Mine started right at the top center, went straight down about 6 inches and then took a sharp bend to the passenger side and is running horizontal now."[6]  Other Class Vehicle owners likewise complained: "Cracked this morning on the drive into work...started driver's side at the bottom. No rock, no damage other than the crack."[7] And other Class Vehicle owners complained on about having multiple cracks.

146.    Similarly, on Facebook, Class Vehicle owners have been complaining about the Windshield Defect, including in the "The New Defender Owners Group" Facebook Group, since Land Rover began selling the vehicles.  For instance, on October 8, 2021, one Class Vehicle owner published a post stating, "Got my first windshield crack today. Was surprised to learn that the dealership doesn't service its own vehicles' windshields. I called the company they use and was told 4 - 6 weeks for a replacement and to continue driving with no worries about safety. They assured me the windshield will not shatter or cause any further problems in the meantime.

---

[5] https://landroverforums.com/forum/2020-defender-60/front-windshield-104029/ (last visited Jun. 27, 2022).

[6] https://landroverforums.com/forum/2020-defender-60/cracked-windshield-107552/ (last visited Jun. 27, 2022).

[7] https://landroverforums.com/forum/2020-defender-60/cracked-windshield-110590/ (last visited Jun. 27, 2022).

Does anyone have firsthand experience with this issue?"[8]  In response, other Class Vehicle owners commented that they too had already experienced the Windshield Defect.

147.    Likewise, on Facebook in the New Defender Owners Group, Class Vehicle owners conducted polls to gather information about Defender vehicles that experienced the Windshield Defect, with one such poll identifying 268 Class Vehicle owners that experienced the Windshield Defect[9] and another poll identifying 47 owners.[10]

148.    Class Vehicle owners have continued to post similar such Facebook posts and comments about the Windshield Defect to date. For instance, on June 25, 2022, one owner posted in the same the New Defender Owners Group "My 4th crack happened at 19k miles. This has to stop."[11]

149.    Moreover, Land Rover monitors customers' complaints made to the National Highway Traffic Safety Administration ("NHTSA"). Federal law requires automakers like Land Rover to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat.1800 (2000).

150.    Automakers also have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Reporting Requirements. *Id*. Similarly,

---

[8] https://www.facebook.com/groups/686273281850563/permalink/1229541830857036/ (last visited Jun. 27, 2022).

[9] https://www.facebook.com/groups/686273281850563/permalink/1244027399408479/ (last visited Jun. 27, 2022).

[10] https://www.facebook.com/groups/686273281850563/permalink/1252213525256533/ (last visited Jun. 27, 2022).

[11] https://www.facebook.com/groups/686273281850563/permalink/1400654720412412/ / (last visited Jun. 27, 2022).

automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including safety-related defects. *Id*. Thus, Land Rover knew or should have known of the many complaints about the Windshield Defect logged by NHTSA ODI, and the content, consistency, and large number of those complaints alerted, or should have alerted, Land Rover to the Windshield Defect.

151. Indeed, complaints concerning the Windshield Defect are one of the most common complaint topic amongst NHTSA complaints regarding the Class Vehicles. The below example complaints concerning 2020-2022 Land Rover Defender vehicles, filed by consumers with the NHTSA and posted on the Internet, which on information and belief Land Rover actively monitored during the relevant time period, demonstrate that the Defect is widespread and dangerous, and that Land Rover has known about the defect at all relevant times:

*2020 Defender NHTSA Complaints*:

- NHTSA Complaint No. 11433648, September 20, 2021 (Incident Date August 18, 2021): My windshield cracked with no apparent strike with under 5K miles on the vehicle. Researching this, LOTS of people experience broken windshields on Defenders and Land Rover products. There are lots of discussion in online owners' forums about the frequency of this and some notion that JLR uses glass that is thinner than other manufacturers.

- NHTSA Complaint No. 11434894, September 29, 2021 (Incident Date September 20, 2021): My front windshield cracked to the point of requiring replacement with neither notice nor reasonable cause (no impact, no crack starting point, besides the bottom edge, no temperature gradients, no pressure applied to the windshield).

- NHTSA Complaint No. 11435211, October 2, 2021 (Incident Date August 7, 2021): Driving along the road with no cars around, the windshield made a loud noise and a crack was formed coming from the passenger side A-pillar. The crack of course grew over time. No rock chip. Clearly a defective windshield. The dealer would not replace it under warranty even though it clearly started where a rock could not have chipped it.

- NHTSA Complaint No. 11491779, November 1, 2022 (Incident Date October 14, 2022): My 2020 Defender has had three incidences of the windshield cracking due to the smallest pebble. The first two cracks, I had professionally sealed. The latest

incident involved a pebble so small that I couldn't see it. In fact, the pebble was so tiny that a point of contact on the windshield can barely be observed. However, it caused the windshield to crack clear across the middle, impairing visibility and creating an unsafe driving experience. This is, I believe, the seventh Land Rover windshield that I have had the misfortune to have crack on me over the years. One Range Rover windshield cracked while sitting in the driveway with no projectiles involved. Another cracked in cooler overnight weather. These windshields are clearly defective and Land Rover is aware of the problem. This is why the dealership offers a very pricey windshield package as an option when you purchase the vehicle. I have called Land Rover corporate again in this instance because I'm fed up with paying $1800 to repair a defective bit of glass, only to have another crack appear and be forced to repair or replace that as well. Land Rover Corporate said that a pebble constituted "outside damage" and the windshield would not be covered under warranty. However, a driver does purchase a car under the presumption that the glass would be safe if struck by a tiny object or if taken through a car wash--as occurred with my previous Range Rover. Taken together, I do request that this consumer safety board review this issue as I know for a fact that I am not the only one concerned about the safety and reliability of the Land Rover windshields.

### 2021 Defender NHTSA Complaints:

- NHTSA Complaint No. 11433619, September 20, 2021 (Incident Date September 19, 2021): Problem statement: Windshield Issue: The windshield developed a sudden crack while the vehicle was stationary, with no external impact or action Conditions: stationary, outside temp: 97 deg Impacting: visibility and safety features such as cameras, sensor, and lane departure assist

- NHTSA Complaint No. 11438618, October 29, 2021 (Incident Date August 2, 2021): The contact owns a 2021 Land Rover Defender. The contact stated that the windshield cracked without impact, causing electrical issues. The vehicle was taken to a local dealer where it was diagnosed but not repaired. The manufacturer was informed of the failure and told the contact that they were unable to assist. The failure mileage was approximately 1,500.

- NHTSA Complaint No. 11439215, November 3, 2021 (Incident Date September 21, 2021): My windshield broke in only owning this car 30 days I hear from other people that this is there 3 time replacement. I think this is a design issues and should be looked into.

- NHTSA Complaint No. 11439152, November 3, 2021 (Incident Date May 29, 2021): 2 cracked windshields, car has only 15K miles- TONS of Defender owners on FB groups and forums same- some one 4th and 5th windshields- current wait to new ones from UK is 2-4 months. Land Rover knows these are defective and won'y admit/recall, just passing this off to customer. A new windshield is $1800 a pop-people getting hit paying high deductible, getting pulled over, poor visibility, some have cracks so large that they can not operate their vehicle. Currently, I am in wait, no ETA for my 3rd new windshield- I have a large crack and 2 small chips from all

36

separate incidents. Huge safety issue, bc cracks interfere with driver assist Dates of Cracks: Car has only 15K miles 1. May 29, 2021 2. August 18, 2021 People on New Defenders Group on Facebook have started survey for owners with the problem - and forums have tons of issues. Imagine all the owners who have only had one crack and just think it's bad luck and don't realize there's an issue?

- NHTSA Complaint No. 11443713, December 13, 2021 (Incident Date December 12, 2021): My windshield spontaneously cracked. No impact, just a sudden cracking noise and the crack appeared shortly thereafter. I was in the car at the time. No impact with anything was noted. (I have had chips many times and this was not that sound). The crack starts at the lower midline of the windshield, extends up about 9" before arcing horizontally. This crack is near identical to at least three other owners of the same car. All had their windshield spontaneously crack in the same manner i describe. No impact noted. The pattern of crack and location is always lower border to the midline of the windshield. One fellow owner is a friend who joked about when I'd have to replace my windshield in my brand new Defender. He experienced the same thing. I believe it may relate to use of the defogger. Heat in the car with colder temps outside. I'm in WA so no extreme temps here. was about 35F outside when the defogger was used. That is the only thing I can think of. Pictures can be provided upon request. The cracks are too similar in location and dimension and too spontaneous (no strike noted) to be anything other that an integral design flaw. Part: Windshield Safety issue: Windshield integrity contributes to the strength of the vehicle in a rollover/accident so I believe this flaw has a direct safety impact for owners of the new Land Rover Defender. Dealer: As this is glass, dealer will not entertain warranty issues but it appears to be just that. I won't waste time contacting dealership. Others have on this matter. No point. No warning signs It has not been inspected by anyone

- NHTSA Complaint No. 11451131, February 9, 2022 (Incident Date November 8, 2021): Component: windshield Issue: under adverse temperature conditions ( e.g. high temp or low temp ) the windshield can develop a sudden crack, without any external impact. Conditions: above 95 deg F or below 30 deg F ; Status: vehicle could be stationary, or in motion; Hazard to occupants: Yes; Safety concern: yes, if the vehicle is in motion the size of the crack can develop very fast and create a catastrophic failure which may impact the occupants. JLR - fails even to acknowledge any issues and denies any design fault or responsibility.

- NHTSA Complaint No. 11451600, February 11, 2022 (Incident Date March 5, 2022): Windshield spontaneously cracked while parked (no impact). Crack was near top center and runs across the safety camera system. Crack was also instantaneously 1.5 foot long and partially obstructs driver's view. Scheduled for inspection by dealership - police, insurance has not been involved. No warning lamps or messages have appeared before or after the crack formed.

- NHTSA Complaint No. 11453301, February 21, 2022 (Incident Date February 17, 2022): Easily cracked windshield. Less than 30 days owned and a small pebble cracked my windshield.

- NHTSA Complaint No. 11455637, March 7, 2022 (Incident Date February 10, 2022): 12 inch crack developed overnight. No signs of rock hit or any other impact.

- NHTSA Complaint No. 11457497, March 20, 2022 (Incident Date April 1, 2021): Shortly after buying the car a small people hit the windshield while driving on the highway and broke the windshield right in the eyesight of the driver side. It was a little larger than a quarter in size and took 3 months for replacement due to back order. 2 weeks after the replacement the windshield spontaneously cracked while driving from the middle base of the windshield up and towards the passenger side about 20 inches long. Nothing hit the car, it just cracked. No heater or defrost was on. It took 6 months for replacement due to Land Rover ordering the wrong windshield and back orders. During this time the windshield got 3 more chips from pebbles/small rocks while driving. 2 weeks after this replacement a small rock hit the windshield on the driver side and chipped it about the size of a nickel. I am getting this filled tomorrow. This is clearly a defect with the windshield as I have had maybe 2 broken windshields in my life up to this point.

- NHTSA Complaint No. 11462763, April 29, 2022 (Incident Date April 29, 2022): Windshield cracked spontaneously while washing. No chips, no damage and hand washed vehicle. Crack is blocking visibility and starts at top of windshield and spiders into 3 cracks.

- NHTSA Complaint No. 11469526, June 16, 2022 (Incident Date May 22, 2022): My windshield crack on its own when it was not even being driven. It appears to be a stress crack as it is a small V at the top center comes down the middle and across the passenger side. Only owned the car a few months and barely driven. I took to the dealer and they said they wouldn't chance covering by warranty out of fear corporate would deny the claim. Spoke with corporate and after a month they finally responded and said they wouldn't cover or have anyone further inspect as they rely on their dealers only and if I was satisfied I should go through arbitration. This appears to be a known issue now and concerning that they wouldn't want to investigate further. My windshield is heated and I wonder if there is a design flaw in the filament put inside the glass? Upsetting to deal with and shocked by lack or responsiveness from Land Rover.

- NHTSA Complaint No. 11470350, June 21, 2022 (Incident Date June 21, 2022): My land Rover Defender is 5 months old with 5,765 miles on it. Driving through the car wash today the windshield "popped" and a large crack started in the top center and spread out both directions in what looks like a mustache. No chip, vehicle was not moving and the windshield failed. Unacceptable.

- NHTSA Complaint No. 11470701, June 23, 2022 (Incident Date June 3, 2022): Windshield cracked for no reason. ie no chip caused by rock, etc. Happened while I was driving with no traffic.

- NHTSA Complaint No. 11471080, June 27, 2022 (Incident Date June 26, 2022): Windshield crack from no none source, appears to be pressure related. Happened at

highway speed. Reading Defender forums this has happened to many customers, some 2-3 times.

- NHTSA Complaint No. 11478479, August 9, 2022 (Incident Date August 9, 2022): 2 complete windshield replacements needed since taking delivery June 2021. This incident was a small chip from a rock on the road that then spread across bottom half of drivers side windshield. These incidents are not isolated, seems other owners are reporting the same thing on this vehicle.

- NHTSA Complaint No. 11481788, August 29, 2022 (Incident Date August 21, 2022): The windshield spontaneously cracked from the middle of the pillar on the driver's side to the center of the windshield. No rock strikes.

*2022 Defender NHTSA Complaints*:

- NHTSA Complaint No. 11439215, November 3, 2021 (Incident Date September 21, 2021): My windshield broke in only owning this car 30 days I hear from other people that this is there 3 time replacement. I think this is a design issues and should be looked into.

- NHTSA Complaint No. 11443713, December 13, 2021 (Incident Date December 12, 2021): My windshield spontaneously cracked. No impact, just a sudden cracking noise and the crack appeared shortly thereafter. I was in the car at the time. No impact with anything was noted. (I have had chips many times and this was not that sound). The crack starts at the lower midline of the windshield, extends up about 9" before arcing horizontally. This crack is near identical to at least three other owners of the same car. All had their windshield spontaneously crack in the same manner i describe. No impact noted. The pattern of crack and location is always lower border to the midline of the windshield. One fellow owner is a friend who joked about when I'd have to replace my windshield in my brand new Defender. He experienced the same thing. I believe it may relate to use of the defogger. Heat in the car with colder temps outside. I'm in WA so no extreme temps here. was about 35F outside when the defogger was used. That is the only thing I can think of. Pictures can be provided upon request. The cracks are too similar in location and dimension and too spontaneous (no strike noted) to be anything other that an integral design flaw. Part: Windshield Safety issue: Windshield integrity contributes to the strength of the vehicle in a rollover/accident so I believe this flaw has a direct safety impact for owners of the new Land Rover Defender. Dealer: As this is glass, dealer will not entertain warranty issues but it appears to be just that. I won't waste time contacting dealership. Others have on this matter. No point. No warning signs It has not been inspected by anyone.

- NHTSA Complaint No. 11451600, February 11, 2022 (Incident Date February 10, 2022): Windshield spontaneously cracked while parked (no impact). Crack was near top center and runs across the safety camera system. Crack was also instantaneously 1.5 foot long and partially obstructs driver's view. Scheduled for inspection by

dealership - police, insurance has not been involved. No warning lamps or messages have appeared before or after the crack formed.

- NHTSA Complaint No. 11453301, February 21, 2022 (Incident Date February 17, 2022): Easily cracked windshield. Less than 30 days owned and a small pebble cracked my windshield.

- NHTSA Complaint No. 11462763, April 29, 2022 (Incident Date April 29, 2022): Windshield cracked spontaneously while washing. No chips, no damage and hand washed vehicle. Crack is blocking visibility and starts at top of windshield and spiders into 3 cracks.

- NHTSA Complaint No. 11464909, May 16, 2022 (Incident Date May 14, 2022): For the SECOND time, my windshield cracked in the upper right corner with no impact. The second time, I wasn't even driving! The crack looks nearly identical, even as it runs. I paid for a new windshield the first time because they insisted that a rock hit me, although none of the people in the car ever heard or saw that. This time, I wasn't even driving.

- NHTSA Complaint No. 11469526, June 16, 2022 (Incident Date May 22, 2022): My windshield crack on its own when it was not even being driven. It appears to be a stress crack as it is a small V at the top center comes down the middle and across the passenger side. Only owned the car a few months and barely driven. I took to the dealer and they said they wouldn't chance covering by warranty out of fear corporate would deny the claim. Spoke with corporate and after a month they finally responded and said they wouldn't cover or have anyone further inspect as they rely on their dealers only and if I was satisfied I should go through arbitration. This appears to be a known issue now and concerning that they wouldn't want to investigate further. My windshield is heated and I wonder if there is a design flaw in the filament put inside the glass? Upsetting to deal with and shocked by lack or responsiveness from Land Rover.

- NHTSA Complaint No. 11470350, June 21, 2022 (Incident Date June 21, 2022): My land Rover Defender is 5 months old with 5,765 miles on it. Driving through the car wash today the windshield "popped" and a large crack started in the top center and spread out both directions in what looks like a mustache. No chip, vehicle was not moving and the windshield failed. Unacceptable.

- NHTSA Complaint No. 11481788 / 11493632, November 15, 2022 (Incident Date September 23, 2022): I Have a 2022 Land Rover defender 110 and it had 8,000 miles on it. One day I was driving and the windshield just cracked, nothing had hit it and no visible chips were present. I have yet to receive a replacement windshield.

152.    By contrast, NHTSA shows zero complaints of windshields cracking or chipping

in 2020-2022 Land Rover vehicles other than Defender, and in the years 2015 through 2019 only

five windshield cracking or chipping complaints were posted, averaging one complaint a year. Thus the volume and frequency of such complaints alerted Land Rover that the Class Vehicles suffered from defective windshields.

153.    Although Land Rover was aware of the widespread nature of the Windshield Defect in the Class Vehicles, and that it posed grave safety risks, Land Rover has failed to take adequate steps to notify all Class Vehicle owners of the Defect and provide relief.

154.    Customers have reported the Windshield Defect in the Class Vehicles to Land Rover directly and through its dealers.  Defendant is fully aware of the Windshield Defect contained in the Class Vehicles.  Moreover, Defendant had the ability to notify Class Vehicle owners about the Windshield Defect directly and via its authorized dealerships at the time of sale and thereafter. Nevertheless, Defendant actively concealed the existence and nature of the Defect from Plaintiffs and the other Class Members at the time of purchase or repair and thereafter. Specifically, Defendant:

      a.  failed to disclose, at the time of purchase or repair and thereafter, any and all known material defects or material nonconformities of the Class Vehicles, including the Windshield Defect;

      b.  failed to disclose, at the time of purchase or repair and thereafter, that the Class Vehicles and their front windshields were not in good working order, were defective, and were not fit for their intended purpose; and,

      c.  failed to disclose and/or actively concealed the fact that the Class Vehicles and their front windshields were defective, despite the fact that Defendant learned of the Windshield Defect as early as 2020.

155.    Defendant has deprived Class Members of the benefit of their bargain, exposed them all to a dangerous safety Defect, and caused them to expend money at its dealerships or other third-party repair facilities and/or take other remedial measures related to the Windshield Defect contained in the Class Vehicles.

156.    Defendant has not recalled the Class Vehicles to repair the Windshield Defect, has not issued any bulletins or instructions to its dealerships regarding the Windshield Defect, has not offered to its customers a suitable repair or replacement of parts related to the Windshield Defect free of charge, and has not reimbursed all Class Vehicle owners and leaseholders who incurred costs for repairs related to the Windshield Defect.

157.    Class Members have not received the value for which they bargained when they purchased or leased the Class Vehicles.

158.    As a result of the Windshield Defect, the value of the Class Vehicles has diminished, including without limitation, the resale value of the Class Vehicles. Reasonable consumers, like Plaintiffs, expect and assume that a vehicle's front windshield is not defective and will not crack, chip and/or fracture for no reason at all or under circumstances that would not cause non-defective windshields to similarly fail. Plaintiffs and Class Members further expect and assume that Land Rover will not sell or lease vehicles with known safety defects, such as the Windshield Defect, and will fully disclose any such defect to consumers prior to purchase or offer a suitable non-defective repair. They do not expect that Land Rover would fail to disclose the Windshield Defect to them, and then refused to remedy the defect under Land Rover's warranty.

## CLASS ACTION ALLEGATIONS

### A.  The Classes

159.    Pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), 23(b)(3), and/or 23(c)(5), Plaintiffs

seek to represent the following state-specific classes:

> **Utah Class:** All persons or entities who purchased or leased any 2020-2022 Land
> Rover Defender vehicle in the State of Utah (the "Utah Class")

> **New Jersey Class:** All persons or entities who purchased or leased any 2020-
> 2022 Land Rover Defender vehicle in the State of New Jersey (the "New Jersey
> Class")

> **Florida Class:** All persons or entities who purchased or leased any 2020-2022
> Land Rover Defender vehicle in the State of Florida (the "Florida Class")

> **California Class:** All persons or entities who purchased or leased any 2020-2022
> Land Rover Defender vehicle in the State of California (the "California Class")

> **Colorado Class:** All persons or entities who purchased or leased any 2020-2022
> Land Rover Defender vehicle in the State of Colorado (the "Colorado Class")

> **Louisiana Class:** All persons or entities who purchased or leased any 2020-2022
> Land Rover Defender vehicle in the State of Louisiana (the "Louisiana Class")

160.    Defendant and its employees or agents are excluded from the Class.

### B.  Numerosity

161.    Upon information and belief, the Classes are each so numerous that joinder of all

members is impracticable. While the exact number and identities of individual members of the

Classes are unknown at this time, such information being in the sole possession of Defendant and

obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis

allege, that thousands of Class Vehicles have been sold and leased nationwide and throughout

California, Colorado, Florida, Louisiana, New Jersey, and Utah.

### C. Common Questions of Law and Fact

162. There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members.  These questions include:

a. whether the Class Vehicles suffer from the Windshield Defect;

b. whether the Windshield Defect constitutes an unreasonable safety hazard;

c. whether Defendant knows about the Windshield Defect and, if so, how long Defendant has known of the Defect;

d. whether the defective nature of the Class Vehicles' front windshield constitutes a material defect;

e. whether Defendant had and has a duty to disclose the defective nature of the Class Vehicles' front windshield to Plaintiffs and the other Class Members;

f. whether Plaintiffs and the other Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

g. whether Defendant knew or reasonably should have known of the Windshield Defect contained in the Class Vehicles before it sold or leased them to Class Members; and

h. Whether Defendant breached its express warranty and the implied warranty of merchantability, engaged in fraudulent concealment and unjust enrichment, and whether Defendant violated the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.,* the Utah Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq.*, Florida Deceptive and Unfair Trade Practices Act, F.S.A. § 501.201, *et seq.,* California Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq.*, California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*,

Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq*., as alleged in this Second Amended Complaint.

### D.   Typicality

163.   The Plaintiffs' claims are typical of the claims of the Classes since Plaintiffs purchased or leased defective Class Vehicles, as did each member of the Classes. Furthermore, Plaintiffs and all members of the Classes sustained economic injuries arising out of Defendant's wrongful conduct.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

### E.   Protecting the Interests of the Class Members

164.   Plaintiffs will fairly and adequately protect the interests of the Classes and have retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither Plaintiffs nor their counsel has any interest which might cause them not to vigorously pursue this action.

### F.   Proceeding Via Class Action is Superior and Advisable

165.   A class action is the superior method for the fair and efficient adjudication of this controversy.  The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible for members of the Classes individually to redress effectively the wrongs done to them.  Even if the members of the Classes could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far

fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Classes can be readily identified and notified based on, *inter alia*, Defendant's vehicle identification numbers, warranty claims, registration records, and database of complaints.

166.    Defendant has acted, and refused to act, on grounds generally applicable to the Classes, thereby making appropriate final equitable relief with respect to the Classes as a whole.

### FIRST CAUSE OF ACTION
**Fraudulent Concealment**

**(Plaintiffs on behalf of the California, Colorado, Florida, New Jersey, and Utah Classes)**

167.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

168.    By affirmatively misrepresenting the Class Vehicles as durable and tough, and by failing to disclose and concealing the defective nature of the Class Vehicles' front windshield from Plaintiffs and Class Members, Land Rover concealed and suppressed material facts concerning the performance and quality of the Class Vehicles.

169.    Defendant knew that the Class Vehicles' front windshields suffered from an inherent defect, were defectively manufactured or made, would fail prematurely, and were not suitable for their intended use.

170.    Defendant was under a duty to Plaintiffs and the Class Members to disclose the defective nature of the Class Vehicles' front windshields and/or the associated repair costs because:

    a.    Defendant was in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles' front windshields;

      b.      Defendant knew that the Class Vehicles suffered from an inherent defect, were defectively manufactured, and were not suitable for their intended use;

      c.      Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that their front windshields have a dangerous safety defect until after they purchased the Class Vehicles; and,

      d.      Defendant knew that Plaintiffs and the Class Members could not reasonably have been expected to learn about or discover the Windshield Defect.

171.    On information and belief, Land Rover still has not made full and adequate disclosures and continues to defraud consumers by concealing material information regarding the Windshield Defect and the performance and quality of Class Vehicles.

172.    The facts concealed or not disclosed by Defendant to Plaintiffs and Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

173.    Plaintiffs and the Classes relied on Defendant to disclose material information it knew, such as the defective nature of the windshields in the Class Vehicles, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

174.    By failing to disclose the Windshield Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

175.    The facts concealed or not disclosed by Defendant to Plaintiffs and the other Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.

176.    Had Plaintiffs and other Class Members known that the Class Vehicles suffer from the Windshield Defect, they would not have purchased the Class Vehicles or would have paid less for them.

177.    Plaintiffs and the other Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Windshield Defect.  That is the reasonable and objective consumer expectation for vehicles.

178.    As a result of Defendant's misconduct, Plaintiffs and the other Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles are defective and require repairs or replacement parts and are worth less money because of the Defect.

179.    Accordingly, Land Rover is liable to Plaintiffs and Class Members for damages in an amount to be proven at trial.

180.    Land Rover's actions and omissions were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class's rights and well-being, to enrich Land Rover. Land Rover's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

181.    Furthermore, as the intended and expected result of its fraud and conscious wrongdoing,  Land Rover has profited and benefited from Plaintiffs' and Class Members' purchase of Class Vehicles containing the Windshield Defect.  Land Rover has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Land Rover's misconduct alleged herein, Plaintiffs and Class Members were not

receiving vehicles of the quality, nature, fitness, or value that had been represented by Land Rover, and that a reasonable consumer would expect.

182.    Land Rover has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale and lease of Class Vehicles and by withholding benefits from Plaintiffs and Class Members at the expense of these parties. Equity and good conscience militate against permitting Land Rover to retain these profits and benefits, and Land Rover should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

183.    Plaintiffs Cerutti, Bishop, Guidorizzi, and Richards seek damages and injunctive and equitable relief for themselves and for the California, Colorado, Florida, and New Jersey Classes. Plaintiff Rains seeks damages for himself and injunctive and equitable relief for himself and the Utah Class.

## SECOND CAUSE OF ACTION
### Unjust Enrichment

**(Plaintiffs on behalf of the California, Colorado, Florida, Louisiana, New Jersey, and Utah Classes)**

184.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

185.    Land Rover has long known that about the Windshield Defect which it concealed and failed to disclose to Plaintiffs and Class Members.

186.    As a result of its fraudulent acts and omissions related to the Windshield Defect, Land Rover obtained monies which rightfully belong to Plaintiffs and the Class Members to the detriment of Plaintiffs and Class Members.

187.    Land Rover appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and the proposed Class Members who, without knowledge of the Windshield Defect, paid a higher price for their vehicles which actually had lower values.   Land Rover also received monies for vehicles that Plaintiffs and the Class Members would not have otherwise purchased or leased.

188.    It would be inequitable and unjust for Land Rover to retain these wrongfully obtained profits.

189.    Land Rover's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

190.    As a result of Defendant's unjust enrichment, Plaintiffs and Class Members have suffered damages.

191.    Plaintiffs do not seek restitution under their Unjust Enrichment claim. Rather, Plaintiffs and Class Members seek non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

192.    Additionally, Plaintiffs seek injunctive relief to compel Defendant to offer, under warranty, remediation solutions that Defendant identifies. Plaintiffs also seek injunctive relief enjoining Defendant from further deceptive distribution, sales, and lease practices with respect to Class Vehicles, enjoining Defendant from selling the Class Vehicles with misleading information concerning the Windshield Defect; compelling Defendant to provide Class members with adequate repairs or with replacement components that do not contain the defects alleged herein; and/or compelling Defendant to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has

been reformed. Money damages are not an adequate remedy for the above requested non-monetary injunctive relief.

### THIRD CAUSE OF ACTION
**Violation of the New Jersey Consumer Fraud Act,**
**N.J.S.A. § 56:8-1,** *et seq.*

**(Plaintiff Cerutti on behalf of the proposed New Jersey Class)**

193.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

194.    Plaintiff Cerutti, the New Jersey Class Members, and Defendant are each a "person" under  N.J.S.A. § 56:8-1(1)(d).

195.    At all relevant times, Defendant has engaged in "advertisement" and "sale" under N.J.S.A. §§ 56:8-1(1)(a) and (1)(e) by advertising, offering for sale, selling, leasing, and/or distributing vehicles in the United States, including in New Jersey, directly or indirectly affecting New Jersey citizens through that trade and commerce.

196.    The allegations set forth herein constitute unfair and deceptive acts and practices in violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.*

197.    By failing to disclose and concealing the Windshield Defect from Plaintiff Cerutti and the New Jersey Class Members, Defendant violated the New Jersey Consumer Fraud Act, because, *inter alia,* Defendant represented that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised.

198.    Defendant's unfair and deceptive acts and practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

199.    Defendant knew that the Class Vehicles suffer from the Windshield Defect, were defectively manufactured or made, and were not suitable for their intended use.

200.    Defendant was under a duty to Plaintiff Cerutti and the New Jersey Class Members to disclose the Windshield Defect because:

 a. Defendant was in a superior position to know the true state of facts about the Windshield Defect contained in the Class Vehicles;

 b. Defendant knew that the Class Vehicles suffered from an inherent defect, were defectively manufactured, and were not suitable for their intended use;

 c. Plaintiff Cerutti and the New Jersey Class Members could not reasonably have been expected to learn or discover that their vehicles have a dangerous safety defect until after they purchased the Class Vehicles; and,

 d. Defendant knew that Plaintiff Cerutti and the New Jersey Class Members could not reasonably have been expected to learn about or discover the Windshield Defect.

201.    The facts concealed or not disclosed by Defendant to Plaintiff Cerutti and the New Jersey Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

202.    Plaintiff Cerutti and the New Jersey Class Members relied on Defendant to disclose material information it knew, such as the Windshield Defect in the Class Vehicles, and

not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

203.    By failing to disclose the Windshield Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

204.    Moreover, Defendant's intentional concealment of and failure to disclose the Windshield Defect constitutes an unfair and deceptive act and practice because, to the detriment of Plaintiff Cerutti and the New Jersey Class Members, that conduct took advantage of Plaintiff Cerutti and the New Jersey Class Members' lack of knowledge, ability, and experience to a grossly unfair degree.  Defendant's unfair and deceptive trade practices were a producing cause of the economic damages sustained by Plaintiff Cerutti and the New Jersey Class Members.

205.    The facts concealed or not disclosed by Defendant to Plaintiff Cerutti and the New Jersey Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.

206.    Had Plaintiff Cerutti and the New Jersey Class Members known that the Class Vehicles would suffer from the Windshield Defect, they would not have purchased the Class Vehicles or would have paid substantially less for them.

207.    Plaintiff Cerutti and the New Jersey Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Windshield Defect.  That is the reasonable and objective consumer expectation for vehicles.

208.    As a result of Defendant's misconduct, Plaintiff Cerutti and the New Jersey Class Members have been harmed and have suffered actual and economic damages in that the Class

Vehicles are defective and require repairs or replacement and are worth less money because of the Defect.

209.    Plaintiff Cerutti and the New Jersey Class Members have each suffered an ascertainable loss as a result of Defendant's misconduct.  The loss is equal to or in excess of the cost of replacing the Class Vehicle's defective windshields with non-defective windshields.

210.    Plaintiff Cerutti has provided adequate notice to Defendant.

211.    Plaintiff Cerutti and the New Jersey Class Members should be awarded three times the amount of their economic damages because Defendant intentionally concealed and failed to disclose the defective nature of the Class Vehicles.

212.    Pursuant to N.J.S.A. § 56:8-20, Plaintiffs will serve the New Jersey Attorney General with a copy of this Complaint within 10 days of its filing.

**FOURTH CAUSE OF ACTION**
**Breach of the Implied Warranty of Merchantability under N.J.S.A. § 12A:2-314**

**(Plaintiff Cerutti on behalf of the proposed New Jersey Class)**

213.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

214.    Defendant is a merchant with respect to motor vehicles.

215.    The Class Vehicles were subject to implied warranties of merchantability running from the Defendant to Plaintiff Cerutti and the New Jersey Class Members.

216.    An implied warranty that the Class Vehicles were merchantable arose by operation of law as part of the sale or lease of the Class Vehicles.

217.    Defendant breached the implied warranty of merchantability in that the Class Vehicles suffer from the defects referenced herein and thus were not in merchantable condition when Plaintiff Cerutti and the New Jersey Class Members purchased or leased the Class

Vehicles, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles are used. Specifically, the Class Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because the Class Vehicles suffer from a Windshield Defect that can make driving unreasonably dangerous.

218.    As a result of Defendant's breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.  Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

### FIFTH CAUSE OF ACTION
**Breach of Express Warranty under N.J.S.A. § 12A:2-313**

**(Plaintiff Cerutti on behalf of the proposed New Jersey Class)**

219.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

220.    In connection with the sale or lease of the Class Vehicles, Defendant provided Plaintiff Cerutti and the New Jersey Class Members with its New Vehicle Limited Warranty where it promised to repair defective parts within 4 years or 50,000 miles in service, whichever comes first.

221.    Plaintiff Cerutti and the New Jersey Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles and Defendant's warranties were part of the basis of the bargain.

222.    Plaintiff Cerutti and the New Jersey Class Members submitted their Vehicles for warranty repairs as referenced herein.  Defendant failed to comply with the terms of the express written warranty provided to each Class member, by failing to repair the Windshield Defect under the vehicle's warranty within a reasonable period of time as described herein.

223.    Plaintiff Cerutti and the New Jersey Class Members have given Defendant reasonable opportunities to cure said defect, but Defendant has been unable and/or has refused to do so within a reasonable time.

224.    As a result of said nonconformities, Plaintiff Cerutti and the New Jersey Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

225.    Plaintiff Cerutti and the New Jersey Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiff Cerutti and the New Jersey Class Members' acceptance of the Class Vehicles.

226.    Plaintiff Cerutti and the New Jersey Class Members would not have purchased or leased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that Class Vehicles contained the Windshield Defect.

227.    As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranties, Plaintiff Cerutti and the New Jersey Class Members have suffered actual and consequential damages.  Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

**SIXTH CAUSE OF ACTION**
**Violation of the Utah Consumer Sales Practices Act,**
**Utah Code Ann. § 13-11-1, *et seq.***

**(Plaintiff Rains on behalf of the proposed Utah Class)**

228.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

229.    Plaintiff Rains, the Utah Class Members, and Defendant are each a "person" under Utah Code Ann. § 13-11-3(5).

230.    Defendant is a "supplier" under Utah Code Ann. § 13-11-3(6) because Defendant, directly or indirectly, regularly solicits, engages in, or enforces consumer transactions in the United States, including Utah.

231.    At all relevant times, Defendant has engaged in "consumer transactions[s]" under Utah Code Ann. § 13-11-3(2) by advertising, offering for sale, selling, leasing, and/or distributing vehicles in the United States, including Utah, directly or indirectly affecting Utah citizens through that trade and commerce.

232.    The allegations set forth herein constitute false, misleading, or deceptive trade acts or practices in violation of Utah's Consumer Sales Practices Act, Utah Code Ann. § 13-11-4.

233.    By failing to disclose and concealing the Windshield Defect from Plaintiff Rains and Utah Class Members, Defendant violated the Utah Consumer Sales Practices Act as it represented that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised.

234.    Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

235.    Defendant knew that the Class Vehicles suffered from the Windshield Defect, were defectively manufactured or made, would fail prematurely, and were not suitable for their intended use.

236. Defendant was under a duty to Plaintiff Rains and Utah Class Members to disclose the defective nature of the Class Vehicles because:

    a. Defendant was in a superior position to know the true state of facts about the Windshield Defect contained in the Class Vehicles;

    b. Defendant knew that the Class Vehicles suffered from an inherent defect, were defectively manufactured, and were not suitable for their intended use;

    c. Plaintiff Rains and Utah Class Members could not reasonably have been expected to learn or discover that their vehicles have a dangerous safety defect until after they purchased the Class Vehicles; and,

    d. Defendant knew that Plaintiff Rains and Utah Class Members could not reasonably have been expected to learn about or discover the Windshield Defect.

237. The facts concealed or not disclosed by Defendant to Plaintiff Rains and Utah Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

238. Plaintiff Rains and Utah Class Members relied on Defendant to disclose material information it knew, such as the Windshield Defect in the Class Vehicles, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

239. By failing to disclose the Windshield Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

240. Moreover, Defendant's intentional concealment of and failure to disclose the Windshield Defect constitutes an "unconscionable act or practice" under Utah Code Ann. § 13-11-5 because, to the detriment of Plaintiff Rains and Utah Class Members, that conduct took advantage of Plaintiff and Class Members' lack of knowledge, ability, and experience to a

grossly unfair degree. That "unconscionable act or practice" was a producing cause of the economic damages sustained by Plaintiff Rains and Utah Class Members.

241.    The facts concealed or not disclosed by Defendant to Plaintiff Rains and other Utah Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.

242.    Had Plaintiff Rains and other Utah Class Members known that the Class Vehicles would suffer from the Windshield Defect, they would not have purchased the Class Vehicles or would have paid less for them.

243.    Plaintiff Rains and the other Utah Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Windshield Defect. That is the reasonable and objective consumer expectation for vehicles.

244.    As a result of Defendant's misconduct, Plaintiff Rains and the other Utah Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles are defective and require repairs or replacement and are worth less money because of the Defect.

245.    Plaintiff Rains has provided adequate notice to Defendant.

246.    Plaintiff Rains and Utah Class Members should be awarded punitive damages because Defendant intentionally concealed and failed to disclose the defective nature of the Class Vehicles.

247.    Additionally, Plaintiff Rains and Utah Class Members seek injunctive relief to compel Defendant to offer, under warranty, remediation solutions that Defendant identifies. Plaintiff Rains and Utah Class Members also seek injunctive relief enjoining Defendant from further deceptive distribution, sales, and lease practices with respect to Class Vehicles, enjoining

Defendant from selling the Class Vehicles with misleading information concerning the Windshield Defect; compelling Defendant to provide Class Members with adequate repairs or with replacement components that do not contain the defects alleged herein; and/or compelling Defendant to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed. Money damages are not an adequate remedy for the above requested non-monetary injunctive relief.

## SEVENTH CAUSE OF ACTION
### Breach of Express Warranty under Utah Code Ann. § 70A-2-313

### (Plaintiff Rains on behalf of the proposed Utah Class)

248.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

249.    In connection with the sale or lease of the Class Vehicles to Plaintiff Rains and Utah Class members, Defendant provided Plaintiff Rains and Utah Class members with its New Vehicle Limited Warranty where it promised to repair defective parts within 4 years or 50,000 miles in service, whichever comes first.

250.    Plaintiff Rains and Utah Class members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles and Defendant's warranties were part of the basis of the bargain.

251.    Plaintiff Rains and Utah Class members submitted their Vehicles for warranty repairs as referenced herein.  Defendant failed to comply with the terms of the express written warranty provided to each Class member, by failing and/or refusing to repair the Windshield Defect within a reasonable period of time under the vehicle's warranty as described herein.

252.    Plaintiff Rains and Utah Class members have given Defendant reasonable opportunities to cure said defect, but Defendant has been unable and/or has refused to do so within a reasonable time.

253.    As a result of said nonconformities, Plaintiff Rains and Utah Class members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

254.    Plaintiff Rains and Utah Class members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiff Rains' and Utah Class members' acceptance of the Class Vehicles.

255.    Plaintiff Rains and Utah Class members would not have purchased or leased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that Class Vehicles contained the Windshield Defect.

256.    As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranties, Plaintiff Rains has suffered actual and consequential damages.  Such damages include, but are not limited to, the loss of the use and enjoyment of his vehicle, and a diminution in the value of the vehicle containing the defects identified herein.

257.    Plaintiff Rains only seeks damages on behalf of himself individually and seeks injunctive relief for himself and the Utah Class.  Specifically, Plaintiff Rains and Utah Class Members seek injunctive relief to compel Defendant to offer, under warranty, remediation solutions that Defendant identifies and compelling Defendant to provide Class Members with adequate repairs or with replacement components that do not contain the defects alleged herein; and/or compelling Defendant to reform its warranty, in a manner deemed to be appropriate by

the Court, to cover the injury alleged and to notify all Class Members that such warranty has

been reformed.

## EIGHTH CAUSE OF ACTION
### Violation of Florida Deceptive and Unfair Trade Practices Act,
### F.S.A. § 501.201, *et seq.*

### (Plaintiff Bishop on behalf of the proposed Florida Class)

258.    Plaintiffs incorporate by reference all allegations contained in this Complaint as

though fully stated herein.

259.    Plaintiff Bishop and the Florida Class Members are each a an "interested party or

person" and "consumer" as defined by F.S.A. 501.203(6) and (7) respectively.

260.    At all relevant times, Defendant has engaged in "Trade" and "Commerce" as

defined by F.S.A. 501.203(8) by advertising, offering for sale, selling, leasing, and/or

distributing vehicles in the United States, including Florida, directly or indirectly affecting

Florida citizens though that trade and commerce.

261.    The allegations set forth herein constitute false, misleading, unlawful or deceptive

trade practice under F.S.A. 501.201, *et seq*.

262.    By failing to disclose and concealing the Windshield Defect from Plaintiff Bishop

and Florida Class Members, Defendant violated the Florida Deceptive and Unfair Trade

Practices Act as it represented that the Class Vehicles had characteristics and benefits that they

do not have, represented that the Class Vehicles were of a particular standard, quality, or grade

when they were of another, and advertised the Class Vehicles with the intent not to sell them as

advertised.

263.    Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

264.    Defendant knew that the Class Vehicles suffered from the Windshield Defect, were defectively manufactured or made, would fail prematurely, and were not suitable for their intended use.

265.    Defendant was under a duty to Plaintiff Bishop and Florida Class Members to disclose the defective nature of the Class Vehicles because:

a.    Defendant was in a superior position to know the true state of facts about the Windshield Defect contained in the Class Vehicles;

b.    Defendant knew that the Class Vehicles suffered from an inherent defect, were defectively manufactured, and were not suitable for their intended use;

c.    Plaintiff Bishop and Florida Class Members could not reasonably have been expected to learn or discover that their vehicles have a dangerous safety defect until after they purchased the Class Vehicles; and,

d.    Defendant knew that Plaintiff Bishop and Florida Class Members could not reasonably have been expected to learn about or discover the Windshield Defect.

266.    The facts concealed or not disclosed by Defendant to Plaintiff Bishop and Florida Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

267.    Plaintiff Bishop and Florida Class Members relied on Defendant to disclose material information it knew, such as the Windshield Defect in the Class Vehicles, and not to

induce them into a transaction they would not have entered had the Defendant disclosed this information.

268.    By failing to disclose the Windshield Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

269.    Moreover, Defendant's intentional concealment of and failure to disclose the Windshield Defect took advantage of Plaintiff Bishop and Florida Class Members' lack of knowledge, ability, and experience to a grossly unfair degree.

270.    The facts concealed or not disclosed by Defendant to Plaintiff Bishop and Florida Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.

271.    Had Plaintiff Bishop and Florida Class Members known that the Class Vehicles would suffer from the Windshield Defect, they would not have purchased the Class Vehicles or would have paid less for them.

272.    Plaintiff Bishop and Florida Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Windshield Defect.  That is the reasonable and objective consumer expectation for vehicles.

273.    As a result of Defendant's misconduct, Plaintiff Bishop and Florida Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles are defective and require repairs or replacement and are worth less money because of the Defect.

274.    Plaintiff Bishop has provided adequate notice to Defendant.

275.     Plaintiff Bishop and Florida Class Members should be awarded punitive damages because Defendant intentionally concealed and failed to disclose the defective nature of the Class Vehicles.

### NINTH CAUSE OF ACTION
### Breach of Express Warranty under F.S.A. § 672.313

**(Plaintiff Bishop on behalf of the proposed Florida Class)**

276.     Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

277.     In connection with the sale or lease of the Class Vehicles to Plaintiff Bishop and Florida Class Members, Defendant provided Plaintiff Bishop and Florida Class Members with its New Vehicle Limited Warranty where it promised to repair defective parts within 4 years or 50,000 miles in service, whichever comes first.

278.     Plaintiff Bishop and Florida Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles and Defendant's warranties were part of the basis of the bargain.

279.     Plaintiff Bishop and Florida Class Members submitted their Vehicles for warranty repairs as referenced herein.  Defendant failed to comply with the terms of the express written warranty provided to each Class member, by failing and/or refusing to repair the Windshield Defect within a reasonable period of time under the vehicle's warranty as described herein.

280.     Plaintiff Bishop and Florida Class Members have given Defendant reasonable opportunities to cure said defect, but Defendant has been unable and/or has refused to do so within a reasonable time.

281.    As a result of said nonconformities, Plaintiff Bishop and Florida Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

282.    Plaintiff Bishop and Florida Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiff Bishop and Florida Class Members' acceptance of the Class Vehicles.

283.    Plaintiff Bishop and Florida Class Members would not have purchased or leased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that Class Vehicles contained the Windshield Defect.

284.    As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranties, Plaintiff Bishop and Florida Class Members have suffered actual and consequential damages.  Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

**TENTH CAUSE OF ACTION**
**Violation of the California Consumers Legal Remedies Act,**
**Cal. Civil Code §§ 1750, *et seq.***

**(Plaintiff Guidorizzi on behalf of the proposed California Class)**

285.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

286.    The California Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq.* ("CLRA") prohibits various deceptive practices in connection with the conduct of a business providing goods, property, or services to consumers primarily for personal, family, or household purposes.  The self-declared purposes of the CLRA are to protect consumers against unfair and

deceptive business practices and to provide efficient and economical procedures to secure such protection. Cal. Civil Code § 1760.

287.    Defendant is a "person" as defined in Cal. Civil Code § 1761(c).

288.    Plaintiff Guidorizzi and the California Class Members are "consumers" as defined in Cal. Civil Code § 1761(d).

289.    The Class Vehicles constitute "goods" and "services," as defined by Cal. Civ. Code § 1761(a) and (b).

290.    Plaintiff Guidorizzi and California Class Members' purchases or leases of the Class Vehicles constitute "transactions," as defined by Cal. Civ. Code § 1761(e).

291.    Plaintiff Guidorizzi and California Class Members purchased or leased the Class Vehicles for personal, family, and household purposes, as defined by Cal. Civ. Code § 1761(d).

292.    Defendant violated California Civil Code § 1770(a)(5), (7), (14), and (16) when it sold or leased Plaintiff Guidorizzi and California Class Members the Class Vehicles with knowledge that they contained the Windshield Defect and knowingly concealed said defects from Plaintiff Guidorizzi and California Class Members with the intent that they rely upon Defendant's concealment.

293.    The Class Vehicles' Windshield Defect poses an unreasonable safety risk to consumers and other members of the public with whom they share the road.  Defendant had exclusive knowledge of the defect and has actively concealed it from consumers.

294.    In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the Class Vehicles are defective. The existence of the Windshield Defect, which manifests in all or substantially all of the Class Vehicles, is material to a reasonable consumer in that it poses an unreasonable risk to their safety, may lead to thousands of dollars in

repair expenses, and causes the Class Vehicles to be worth substantially less than they would otherwise be valued.

295.    In purchasing or leasing the Class Vehicles, Plaintiff Guidorizzi and California Class Members were deceived by Defendant's failure to disclose that the Class Vehicles suffered from the Windshield Defect as described above, or that Defendant would not repair or replace such defect as required under applicable warranties.

296.    In purchasing or leasing the Class Vehicles, Plaintiff Guidorizzi and Class Members were deceived by Defendant's failure to disclose that the Class Vehicles' windshields are substantially likely to fail and crack in the course of ordinary use of the Class Vehicles.

297.    Defendant owed Plaintiff Guidorizzi and California Class Members a duty to disclose the truth about the Windshield Defect because:

    a.    Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' windshields;

    b.    Defendant knew that the Class Vehicles and their windshields suffered from an inherent defect, were defectively made and/or manufactured, and were not suitable for their intended use;

    c.    Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and their windshields; and

    d.    Defendant actively concealed the defective nature of the Class Vehicles and their windshields from Plaintiff Guidorizzi and California Class Members.

298.    Defendant intentionally and knowingly concealed material facts regarding the Class Vehicles with an intent to mislead Plaintiff Guidorizzi and California Class Members.

299.    Plaintiff Guidorizzi and Class Members reasonably relied upon Defendant's false misrepresentations. They had no way of knowing that Defendant's representations were false and gravely misleading.

300.    Plaintiff Guidorizzi and California Class Members were unaware of the Windshield Defect and would not have purchased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, of such defects in the Class Vehicles.

301.    As a result of Defendant's acts, Plaintiff Guidorizzi and Class Members have suffered damages. Plaintiff Guidorizzi and Class Members would not have purchased or leased Class Vehicles had the Windshield Defect and associated risks and costs been disclosed to them. They are left with vehicles of diminished value and utility because of such defect, which continues to pose a safety risk and will continue to require future repairs and replacement parts at Class Vehicle owners' expense.

302.    Plaintiff Guidorizzi seeks an order requiring Defendant to immediately disclose the existence of the Windshield Defect and associated risks to all existing and prospective customers, to repair the defect and all resulting damage in Class Vehicles free of charge, and to cease selling new or certified pre-owned Class Vehicles through its dealerships until the defect is remedied.

303.    Plaintiff Guidorizzi provided Defendant with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a).  To date, Defendant has failed to provide appropriate relief for its violations of the CLRA. Therefore, Plaintiff Guidorizzi and California Class Members seek monetary, compensatory, and punitive damages, in addition to injunctive and equitable relief.

## ELEVENTH CAUSE OF ACTION
### Violation of California Unfair Competition Law
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

### (Plaintiff Guidorizzi on behalf of the proposed California Class)

304.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

305.    California's Unfair Competition Law ("UCL"), California's Bus. & Prof. Code, § 17200, prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

306.    The Class Vehicles' Windshield Defect poses an unreasonable safety risk to consumers and other members of the public with whom they share the road. Defendant had exclusive knowledge of the defect and has actively concealed it from consumers.

307.    In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the Class Vehicles are defective. The existence of the Windshield Defect, which manifests in all or substantially all of the Class Vehicles, is material to a reasonable consumer in that it poses an unreasonable risk to their safety, may lead to thousands of dollars in repair expenses, and causes the Class Vehicles to be worth substantially less than they would otherwise be valued.

308.    In purchasing or leasing the Class Vehicles, Plaintiff Guidorizzi and California Class Members were deceived by Defendant's failure to disclose that the Class Vehicles suffer from the Windshield Defect as described above, or that Defendant would not cure such defect as required under applicable warranties.

309.    In purchasing or leasing the Class Vehicles, Plaintiff Guidorizzi and California Class Members were deceived by Defendant's failure to disclose that the Class Vehicles' windshield is substantially likely to fail in the course of ordinary vehicle operation.

70

310.    Defendant owed Plaintiff Guidorizzi and California Class Members a duty to disclose the truth about the Windshield Defect because:

    a.    Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' windshields;

    b.    Defendant knew that the Class Vehicles and their windshields suffered from an inherent defect, were defectively designed and/or manufactured, and were not suitable for their intended use;

    c.    Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and their windshields; and

    d.    Defendant actively concealed the defective nature of the Class Vehicles and their windshields from Plaintiff Guidorizzi and California Class Members.

311.    Defendant intentionally and knowingly concealed material facts regarding the Class Vehicles with the intent to mislead Plaintiff Guidorizzi and California Class Members.

312.    Plaintiff Guidorizzi and California Class Members reasonably relied upon Defendant's false misrepresentations. They had no way of knowing that Defendant's representations were false and gravely misleading.

313.    Plaintiff Guidorizzi and California Class Members were unaware of the Windshield Defect and that the Class Vehicles' windshields are substantially likely to fail in the course of normal everyday driving conditions and would not have purchased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, of such defects in the Class Vehicles.

314. Plaintiff Guidorizzi and California Class Members are reasonable consumers who do not expect their vehicles to suffer from the Windshield Defect.

315. Defendant knew the Class Vehicles and their windshields suffered from inherent defects, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

316. In failing to disclose the defects with the Class Vehicles' windshields, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

317. The facts Defendant concealed from or failed to disclose to Plaintiff Guidorizzi and California Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease the Class Vehicles. Had Plaintiff Guidorizzi and California Class Members known that the Class Vehicles suffered from the Windshield Defect and posed a safety hazard, they would not have purchased or leased the Class Vehicles or would have paid less for them.

318. Defendant continued to conceal the defective nature of the Class Vehicles and the Windshield Defect even after the Class Members began to report problems.

319. Defendant's conduct was and is likely to deceive consumers.

320. Defendant's acts, conduct and practices were unlawful, in that they constituted:

a. Violations of the California Consumer Legal Remedies Act;

b. Violations of the Song-Beverly Consumer Warranty Act; and

c. Violations of the express warranty provisions of California Commercial Code section 2313.

321. By its conduct, Defendant has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

322.    Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business and were capable of deceiving a substantial portion of the purchasing public.

323.    As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiff Guidorizzi and California Class Members have suffered and will continue to suffer actual damages.

324.    The Class Vehicles are worth less with the Windshield Defect.

325.    Defendant has been unjustly enriched and should be required to make restitution to Plaintiff Guidorizzi and California Class Members pursuant to §§ 17203 and 17204 of the Business & Professions Code.

326.    Further, Plaintiff Guidorizzi seeks an order enjoining Defendant from committing such unlawful, unfair, and fraudulent business practices, and seek the full amount of money Plaintiff Guidorizzi and California Class Members paid for the Class Vehicles and/or restitutionary disgorgement of profits from Defendant.  They also seek injunctive relief compelling Defendant to provide Class members with replacement components that do not contain the defects alleged herein; and/or compelling Defendant to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed.

327.     Plaintiffs also seek attorneys' fees and costs under Cal Code Civ. Proc. § 1021.5.

328.    Money damages are not an adequate remedy for the above requested non-monetary injunctive relief because to date Defendant has not  agreed to repair or replace Class Vehicles' windshields with non-defective windshields under its warranty, and Defendant has not

developed or released to the public non-defective replacement windshields for the Class

Vehicles.

## TWELFTH CAUSE OF ACTION
### Breach of Implied Warranty pursuant to Song-Beverly
### Consumer Warranty Act – Cal. Civ. Code §§ 1792 and 1791.1, *et seq.*

### (Plaintiff Guidorizzi on behalf of the proposed California Class)

329.    Plaintiffs incorporate by reference all allegations contained in this Complaint as

though fully stated herein.

330.    Defendant is a merchant with respect to motor vehicles.

331.    The Class Vehicles were subject to implied warranties of merchantability running

from the Defendant to Plaintiff Guidorizzi and the California Class Members.

332.    An implied warranty that the Class Vehicles were merchantable arose by

operation of law as part of the sale or lease of the Class Vehicles.

333.    Defendant breached the implied warranty of merchantability in that the Class

Vehicles suffer from the defects referenced herein and thus were not in merchantable condition

when Plaintiff Guidorizzi and the California Class Members purchased or leased the Class

Vehicles, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for

which such vehicles are used. Specifically, the Class Vehicles were and are not fit for their

ordinary purpose of providing reasonably reliable and safe transportation because the Class

Vehicles suffer from a Windshield Defect that can make driving unreasonably dangerous.

334.    As a result of Defendant's breach of the applicable implied warranties, owners

and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value

of their Class Vehicles.

335.    Additionally, as a result of the Windshield Defect, Plaintiff Guidorizzi and the

California Class Members were harmed and suffered actual damages.

336.    Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

## THIRTEENTH CAUSE OF ACTION
### Breach of Express Warranty under Cal. Comm. Code § 2313

### (Plaintiff Guidorizzi on behalf of the proposed California Class)

337.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

338.    In connection with the sale or lease of the Class Vehicles to Plaintiff Guidorizzi and the California Class Members, Defendant provided Plaintiff Guidorizzi and the California Class Members with its New Vehicle Limited Warranty where it promised to repair defective parts within 4 years or 50,000 miles in service, whichever comes first.

339.    Plaintiff Guidorizzi and the California Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles and Defendant's warranties were part of the basis of the bargain.

340.    Plaintiff Guidorizzi and the California Class Members submitted their Vehicles for warranty repairs as referenced herein. Defendant failed to comply with the terms of the express written warranty provided to each Class member, by failing and/or refusing to repair the Windshield Defect within a reasonable period of time under the vehicle's warranty as described herein.

341.    Plaintiff Guidorizzi and the California Class Members have given Defendant reasonable opportunities to cure said defect, but Defendant has been unable and/or has refused to do so within a reasonable time.

342.    As a result of said nonconformities, Plaintiff Guidorizzi and the California Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

343.    Plaintiff Guidorizzi and the California Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiff Guidorizzi and the California Class Members' acceptance of the Class Vehicles.

344.    Plaintiff Guidorizzi and the California Class Members would not have purchased or leased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that Class Vehicles contained the Windshield Defect.

345.    As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranties, Plaintiff Guidorizzi and the California Class Members have suffered actual and consequential damages. Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

### FOURTEENTH CAUSE OF ACTION
**Breach of Express Warranty pursuant to Song-Beverly Consumer Warranty Act – Cal. Civ. Code §§ 1793 and 1791.2, *et seq*.**

**(Plaintiff Guidorizzi on behalf of the proposed California Class)**

346.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

347.    Plaintiff Guidorizzi and the California Class Members are each a "buyer" as defined in Cal. Civ. Code § 1791(b).

348.    Defendant is a "manufacturer" as defined in Cal. Civ. Code § 1791(j).

349.    The Class Vehicles are each a "consumer good" as defined in Cal. Civ. Code § 1791(a).

350.    Cal. Civ. Code § 1794 provides a cause of action for any consumer who is damaged by the failure of a manufacturer to comply with an express warranty.

351.    In connection with the sale or lease of the Class Vehicles to Plaintiff Guidorizzi and the California Class Members, Defendant provided Plaintiff Guidorizzi and the California Class Members with express warranties within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2.

352.    Specifically, in connection with the sale or lease of the Class Vehicles to Plaintiff Guidorizzi and the California Class Members, Defendant provided Plaintiff Guidorizzi and the California Class Members with a New Vehicle Limited Warranty, under which it agreed to repair or replace original components found to be defective in material or workmanship within the first 4 years or 50,000 miles in service, whichever comes first.

353.    Plaintiff Guidorizzi and the California Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles and Defendant's warranties were part of the basis of the bargain.

354.    Defendant breached these express warranties in that the Class Vehicles suffer from the above-described defects with the windshield, which substantially impair the Class Vehicles' use, safety, and value to Plaintiff Guidorizzi and the California Class Members.

355.    Plaintiff Guidorizzi and the California Class Members have given Defendant reasonable opportunities to cure said defects, but Defendant has been unable to do so within a reasonable time.

356.    As a result of said nonconformities, Plaintiff Guidorizzi and the California Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, comfortable, and efficient transportation.

357.    Plaintiff Guidorizzi and the California Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiff Guidorizzi and the California Class Members' acceptance of the Class Vehicles.

358.    Plaintiff Guidorizzi and the California Class Members would not have purchased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that the windshield did not function as advertised and warranted.

359.    As a result of Defendant's breach of express warranties, Plaintiff Guidorizzi and the California Class Members have been damaged in an amount that is the difference between the value of Class Vehicles if they had possessed the qualities and attributes represented and the value of the Class Vehicles Plaintiff Guidorizzi and the California Class Members actually received.

**FIFTEENTH CAUSE OF ACTION**
**Violation of the Colorado Consumer Protection Act,**
**Colo. Rev. Stat. § 6-1-101, *et seq.***

**(Plaintiff Richards on behalf of the proposed Colorado Class)**

360.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

361.    Colorado's Consumer Protection Act (the "CCPA") prohibits a person from engaging in a "deceptive trade practice," which includes knowingly making "a false representation as to the source, sponsorship, approval, or certification of goods," or "a false

representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods." Colo. Rev. Stat. § 6-1-105(1)(b), (e). Deceptive practices prohibited by the CCPA include "fail[ing] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction." Colo. Rev. Stat. § 6-1-105.

362.    Defendant is a "person" under Colo. Rev. Stat. § 6-1-102(6).

363.    Plaintiff Richards and the Colorado Class Members are "consumers" for purposes of Colo. Rev. Stat. § 6-1-113(1)(a).

364.    The allegations set forth herein constitute unfair and deceptive acts and practices in violation of the Colorado's Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*

365.    By failing to disclose and concealing the Windshield Defect from Plaintiff Richards and the Colorado Class Members, Defendant violated the CCPA, because, *inter alia,* Defendant represented that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised.

366.    Defendant's unfair and deceptive acts and practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

367.    Defendant knew that the Class Vehicles suffer from the Windshield Defect, were defectively manufactured or made, and were not suitable for their intended use.

79

368.    Defendant was under a duty to Plaintiff Richards and the Colorado Class Members to disclose the Windshield Defect because:

    a.   Defendant was in a superior position to know the true state of facts about the Windshield Defect contained in the Class Vehicles;

    b.   Defendant knew that the Class Vehicles suffered from an inherent defect, were defectively manufactured, and were not suitable for their intended use;

    c.   Plaintiff Richards and the Colorado Class Members could not reasonably have been expected to learn or discover that their vehicles have a dangerous safety defect until after they purchased the Class Vehicles; and,

    d.   Defendant knew that Plaintiff Richards and the Colorado Class Members could not reasonably have been expected to learn about or discover the Windshield Defect.

369.    The facts concealed or not disclosed by Defendant to Plaintiff Richards and the Colorado Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

370.    Plaintiff Richards and the Colorado Class Members relied on Defendant to disclose material information it knew, such as the Windshield Defect in the Class Vehicles, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

371.    By failing to disclose the Windshield Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

372.    Moreover, Defendant's intentional concealment of and failure to disclose the Windshield Defect constitutes an unfair and deceptive act and practice because, to the detriment

of Plaintiff Richards and the Colorado Class Members, that conduct took advantage of Plaintiff Richards and the Colorado Class Members' lack of knowledge, ability, and experience to a grossly unfair degree. Defendant's unfair and deceptive trade practices were a producing cause of the economic damages sustained by Plaintiff Richards and the Colorado Class Members.

373.    The facts concealed or not disclosed by Defendant to Plaintiff Richards and the Colorado Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.

374.    Had Plaintiff Richards and the Colorado Class Members known that the Class Vehicles would suffer from the Windshield Defect, they would not have purchased the Class Vehicles or would have paid substantially less for them.

375.    Plaintiff Richards and the Colorado Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Windshield Defect.  That is the reasonable and objective consumer expectation for vehicles.

376.    As a result of Defendant's misconduct, Plaintiff Richards and the Colorado Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles are defective and require repairs or replacement and are worth less money because of the Defect.

377.    Pursuant to Colo. Rev. Stat. § 6-1-113, Plaintiff Richards seeks monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and discretionary trebling of such damages, or (b) statutory damages in the amount of $500 for Plaintiff Richards and each Colorado Class Member.

378. Plaintiff Richards and Colorado Class Members also seek punitive damages because Defendant engaged in aggravated and outrageous conduct.

379. Plaintiff Richards also seeks an order enjoining Defendant's unfair, unlawful, or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper remedy under the CCPA.

380. Plaintiff Richards has provided adequate notice to Defendant.

## SIXTEENTH CAUSE OF ACTION
### Breach of the Implied Warranty of Merchantability under Colo. Rev. Stat. § 4-2-314

### (Plaintiff Richards on behalf of the proposed Colorado Class)

381. Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

382. Defendant is a merchant with respect to motor vehicles.

383. The Class Vehicles were subject to implied warranties of merchantability running from the Defendant to Plaintiff Richards and the Colorado Class Members.

384. An implied warranty that the Class Vehicles were merchantable arose by operation of law as part of the sale or lease of the Class Vehicles.

385. Defendant breached the implied warranty of merchantability in that the Class Vehicles suffer from the defects referenced herein and thus were not in merchantable condition when Plaintiff Richards and the Colorado Class Members purchased or leased the Class Vehicles, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles are used. Specifically, the Class Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because the Class Vehicles suffer from a Windshield Defect that can make driving unreasonably dangerous.

386.    As a result of Defendant's breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

## SEVENTEENTH CAUSE OF ACTION
### Breach of Express Warranty under Colo. Rev. Stat. § 4-2-313

#### (Plaintiff Richards on behalf of the proposed Colorado Class)

387.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

388.    In connection with the sale or lease of the Class Vehicles, Defendant provided Plaintiff Richards and the Colorado Class Members with its New Vehicle Limited Warranty where it promised to repair defective parts within 4 years or 50,000 miles in service, whichever comes first.

389.    Plaintiff Richards and the Colorado Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles and Defendant's warranties were part of the basis of the bargain.

390.    Plaintiff Richards and the Colorado Class Members submitted their Vehicles for warranty repairs as referenced herein.  Defendant failed to comply with the terms of the express written warranty provided to each Class member, by failing to repair the Windshield Defect under the vehicle's warranty within a reasonable period of time as described herein.

391.    Plaintiff Richards and the Colorado Class Members have given Defendant reasonable opportunities to cure said defect, but Defendant has been unable and/or has refused to do so within a reasonable time.

392.    As a result of said nonconformities, Plaintiff Richards and the Colorado Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

393.    Plaintiff Richards and the Colorado Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiff Richards and the Colorado Class Members' acceptance of the Class Vehicles.

394.    Plaintiff Richards and the Colorado Class Members would not have purchased or leased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that Class Vehicles contained the Windshield Defect.

395.    As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranties, Plaintiff Richards and the Colorado Class Members have suffered actual and consequential damages. Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendant as follows:

a.    An order certifying the proposed Classes, designating Plaintiffs as named representative of the Classes, and designating the undersigned as Class Counsel;

b. An order awarding Plaintiffs and class members their actual damages, incidental and consequential damages, punitive damages, and/or other form of monetary relief provided by law;

c. An order awarding Plaintiffs and the classes restitution, disgorgement, or other equitable relief as the Court deems proper;

d. Equitable relief including, but not limited to, replacement of the Class Vehicles with new vehicles, or repair of the defective Class Vehicles with an extension of the express warranties and service contracts which are or were applicable to the Class Vehicles;

e. A declaration requiring Defendant to comply with the various provisions of the state and federal consumer protection statutes herein alleged and to make all the required disclosures;

f. Reasonable attorneys' fees and costs;

g. Pre-judgment and post-judgment interest, as provided by law;

h. Plaintiffs demand that Defendant perform a recall, and repair all Class Vehicles; and

i. Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: October 26, 2023

Respectfully submitted,

By  /s/ *Sergei Lemberg*
Sergei Lemberg, Esq.
Sofia Balile, Esq.
LEMBERG LAW, LLC
43 Danbury Road
Wilton, CT 06897
Phone: (203) 653-2250
Fax:    (203) 653-3424
*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 26, 2023, I caused a copy of the Second Amended Class Action Complaint in this matter to be electronically filed with the Clerk of the United States District Court, District of New Jersey and that a copy of these documents will also be served on all counsel of record via the court's CM/ECF.

By  _/s/ Sergei Lemberg_____
       Sergei Lemberg, Esq.