**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JASON RAINS, DAVID CERUTTI, PAIGE BISHOP, CARLOS GUIDORIZZI, HEATHER RICHARDS, BRIAN GRESH, STEPHEN SEIBER, CHRIS ROBINSON, PAMELA HUGHES, and TIFFANY DEBAS, on behalf themselves and all others similarly situated,

    Plaintiffs,

    v.

JAGUAR LAND ROVER NORTH AMERICA, LLC, JAGUAR LAND ROVER AUTOMOTIVE PLC, and JAGUAR LAND ROVER LIMITED,

    Defendants.

No. 22cv4370 (EP) (JSA)

**OPINION**

**PADIN, District Judge.**

Plaintiffs seek to bring class action claims on behalf of themselves and other consumers who either purchased or leased 2020–2022 Land Rover Defender vehicles manufactured, designed, marketed, distributed, and sold by Defendants Jaguar Land Rover North America LLC ("JLRNA"), Jaguar Land Rover Automotive PLC ("JLR Automotive"), and Jaguar Land Rover Limited ("JLR Limited") regarding allegedly defective windshields. D.E. 86 ("Consolidated Class Action Complaint" or "CCAC") ¶ 1. JLR Automotive and JLR Limited move to dismiss Plaintiffs' Class Action Complaint under Federal Rule of Civil Procedure 12(b)(2).[1] D.E. 96-1 ("Motion" or

---

[1] Although JLRNA does not join in on this motion to dismiss, the Court refers to JLR Automotive and JLR Limited collectively as "Defendants" in this Opinion for convenience.

"Mot."). Plaintiffs oppose and, in the alternative, request jurisdictional discovery. D.E. 100 ("Opposition" or "Opp'n"). Defendants reply. D.E. 105 ("Reply").

The Court decides the matter without oral argument. *See* Fed. R. Civ. P. 78; L. Civ. R. 78.1(b). For the reasons explained below, the Court will **GRANT in part** and **DENY in part** Defendants' Motion. Specifically, the Court will **GRANT** the Motion as to JLR Automotive and **DISMISS** it from this case *without prejudice*. The Court will **DENY** the Motion as to JLR Limited.

### I. BACKGROUND

#### A. Factual Background[2]

JLR Limited is a manufacturing company headquartered in and incorporated under the laws of England and Wales. D.E. 96-2 ("Martinez Decl.") ¶¶ 4–5. JLR Limited wholly owns JLRNA, its "U.S. national sales company" that is headquartered and incorporated in Mahwah, New Jersey. *Id.* ¶ 11. JLR Limited does not pay taxes in New Jersey, have offices or facilities in New Jersey, sell or distribute in New Jersey, nor is it registered to do business in New Jersey. *Id.* ¶¶ 7–9, 11. JLR Limited does, however, design and manufacture vehicles in the United Kingdom, including 2020–2022 Land Rover Defender vehicles (the "Class Vehicles"). *See id.* ¶¶ 6, 11. In the United Kingdom, JLR Limited also sells "certain Jaguar and Land Rover brand vehicles" to its "Mahwah-based arm," JLRNA. *Id.* ¶¶ 11, 12; D.E. 100-3 at 1. JLR Limited maintains this relationship so that JLRNA may import its vehicles for sale and distribution to dealers across North America. Martinez Decl. ¶ 12. As a result, all JLR Limited's sales in North America necessarily flow to it

---

[2] The facts in this section derive from the Consolidated Class Action Complaint's well-pled factual allegations, which the Court presumes to be true for purposes of resolving this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Factual disputes elicited through briefing are also resolved in favor of Plaintiffs. *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010).

2

through JLRNA in New Jersey.  JLR Limited also communicates with JLRNA regarding defective windshields, warranty claims, and sales and demand data for the vehicles it sells to JLRNA.  CCAC ¶¶ 244, 256.  JLR Limited does not directly control JLRNA's marketing strategy.  Martinez Decl. ¶ 20.

JLR Automotive is a holding company also headquartered in and incorporated under the laws of England and Wales.  D.E. 96-3 ("Berry Decl.") ¶ 4.  It is multiple levels removed from JLRNA.  *Id.* ¶ 12.  JLR Automotive has no offices or facilities in New Jersey, nor is it registered to do business in New Jersey.  *Id.* ¶¶ 10–12.  JLR Automotive does not manufacture, develop, design, market, or sell anything.  *Id.* ¶ 9.  It does not control JLRNA's marketing strategy.  *Id.* ¶ 16.

Plaintiffs allege that 2020–2022 Land Rover Defender Vehicles (the "Class Vehicles") were sold with defective windshields that "crack, chip, and/or fracture for no reason at all and/or under circumstances that would not cause non-defective windshields to similarly fail such as impact from a small pebble."  CCAC ¶ 230.  Plaintiffs also allege that this defect renders the cars unsafe, and that Defendants have refused to provide repair services for the defective windshields.  *Id.* ¶¶ 234–37.  Finally, Plaintiffs allege that Defendants knew about the defect and proceeded to sell the Class Vehicles anyway.  *Id.* ¶¶ 239–46.

### B.     Procedural History

This Court previously ruled on a JLRNA's Motion to dismiss Plaintiffs' First Amended Complaint, D.E. 16, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  D.E. 44. After this Court granted Defendant's motion to dismiss in part, Plaintiffs filed several subsequent amended complaints.  *See* Dkt.  Plaintiffs filed the now-operative Consolidated Class Action Complaint on January 17, 2025.  CCAC.  As discussed, Plaintiffs sue JLRNA, JLR Limited, and

3

JLR Automotive, asserting claims related to the purported windshield defect in the Class Vehicles. *Id.* ¶ 1. JLR Limited and JLR Automotive both accepted service of the Consolidated Class Action Complaint and now move to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Mot.

II.     **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 4(k), a district court may exercise personal jurisdiction according to the law of the forum state where it sits. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007). New Jersey law permits the exercise of personal jurisdiction coextensive with the Due Process Clause of the United States Constitution. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing N.J. Ct. Rule 4:4–4(c)). Therefore, so long as a defendant has "certain minimum contacts with . . . [New Jersey]" and "the maintenance of the suit does not offend traditional notions of fair play and substantial justice," the defendant may be subject to suit. *O'Connor*, 496 F.3d at 316–17 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).[3]

There are two types of personal jurisdiction: general and specific. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 352 (2021). General jurisdiction applies to all claims against a defendant when that defendant is "essentially at home." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific jurisdiction applies only to claims against a defendant that relates to its contacts with the forum. *Bristol-Myers Squibb Co. v. Superior Ct. of*

---

[3] In *O'Connor*, the Third Circuit evaluated whether a court could exercise personal jurisdiction pursuant to Pennsylvania law. 496 F.3d at 316. Like New Jersey, Pennsylvania's long-arm statute is coextensive with the Due Process Clause of the United States Constitution. *See id.* Therefore, the Third Circuit's approach in *O'Connor* applies to the exercise of personal jurisdiction under New Jersey law too.

4

*Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)).

To exercise specific jurisdiction over a nonresident defendant, courts must analyze the relationship between the defendant's contacts with the forum and with the plaintiff's claims. *Ford*, 592 U.S. at 359. In analyzing that relationship, courts look at two factors. *O'Connor*, 496 F.3d at 318–19; *Hepp v. Facebook*, 14 F.4th 204, 207 (3d Cir. 2021). *First*, the defendant must have purposefully availed itself of the forum state. *Ford*, 592 U.S. at 351. *Second*, "the plaintiff's claims 'must arise out of or relate to the defendant's contacts' with the forum." *Id.* (quoting *Bristol-Myers*, 582 U.S. at 262). "In other words," the first two prongs require "'an affiliation between the forum and the underlying controversy, principally an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers*, 582 U.S. at 262 (quoting *Goodyear*, 564 U.S. at 919).

In addition to analyzing the above two factors, the exercise of jurisdiction over the defendant must 'comport with traditional notions of fair play and substantial justice' such that 'the defendant should reasonably anticipate being haled into court in that forum.'" *Hasson v. FullStory, Inc.*, 114 F.4th 181, 186 (3d Cir. 2024) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003)).

Plaintiffs bear the burden of demonstrating facts that support a court's exercise of personal jurisdiction at the motion to dismiss stage. *Toys "R" Us*, 318 F.3d at 456. At this stage, a district court must construe disputed facts in favor of the plaintiff and "[w]here the district court does not hold an evidentiary hearing, the plaintiff need only establish a prima facie case of personal jurisdiction." *Eurofins Pharma*, 623 F.3d at 155. When a plaintiff does "suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the nonresident defendant]

5

and the forum state,'" courts should deny the defendant's motion to dismiss. *Toys "R" Us*, 318 F.3d at 456 (quoting *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).

## III.   ANALYSIS

Here, the parties agree that this Court may not exercise general jurisdiction over JLR Limited or JLR Automotive. Opp'n at 5 n.2. The parties' only current dispute is whether it is plausible that this Court may exercise specific jurisdiction over JLR Limited and JLR Automotive, and if not, whether jurisdictional discovery may proceed against Defendants.

"Each defendant's contacts with the forum state," however, "must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984). This Court therefore analyzes its ability to exercise specific jurisdiction over JLR Limited and JLR Automotive separately and finds that it may exercise specific jurisdiction over JLR Limited, but it may not exercise specific jurisdiction over JLR Automotive. The Court also agrees with Defendants that no further information is necessary to determine the issue of specific jurisdiction.[4] Reply at 11–13.

### A.   JLR Limited

Plaintiffs have shown that JLR Limited has purposefully availed itself of doing business in New Jersey and that its claims relating to the allegedly defective windshields in the Class Vehicles arise out of those contacts. And because Defendants do not show why this Court's exercise of specific jurisdiction would offend notions of fair play and justice, this Court will **DENY** Defendants' motion with respect to JLR Limited.

---

[4] The parties have presented sufficient facts to this Court that enable it to make a determination with respect to the exercise of specific jurisdiction without holding this Motion in abeyance or deferring its ruling. For the reasons discussed in the foregoing parts of this Opinion, this Court may exercise specific jurisdiction over JLR Limited as it relates to the defective windshields in the Class Vehicles it sold to JLRNA for the United States market.

*1.    Purposeful availment*

The exercise of specific jurisdiction requires "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum, thus invoking the benefits and protections of its laws." *Goodyear*, 564 U.S. at 924 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

JLR Limited designs and manufactures vehicles, including the Class Vehicles. In its efforts to sell worldwide, JLR Limited targets the United States and uses its New Jersey subsidiary, JLRNA, as its exclusive storefront to serve the national market, thereby deliberately invoking the benefits and protections of New Jersey. While an isolated sale may not be sufficient to support this Court's exercise of specific jurisdiction, *Ford*, 592 U.S. at 363, JLR Limited's contacts with New Jersey go well beyond that. JLR Limited sells vehicles meant for the United States exclusively to its "Mahwah-based arm," JLRNA, so that JLRNA may then sell and distribute JLR Limited's vehicles throughout the United States. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011) (plurality opinion) (explaining that in their efforts to avail themselves of the United States economy, "foreign defendants will often target or concentrate on particular States, subjecting them to specific jurisdiction in those forums"); *see also D'Jamoos ex rel. Estate Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 107 (3d Cir. 2009) (finding that as the nonresident defendant's "only United States subsidiary, [the subsidiary's] *raison d'être*" was to help serve the nonresident defendant in North and South America); *c.f. Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984) (finding that "mere purchases [made in the forum State], even if occurring at regular intervals, are not enough to warrant a State's assertion of [general] jurisdiction over a nonresident corporation in a cause of action *not related to those purchase transactions*" (emphasis added)).

Plaintiffs also allege that JLR Limited communicates with JLRNA regarding the windshields, applicable warranties, sales and demand data for the vehicles it sells to JLRNA. The Third Circuit has "been clear that such communications may be factored into the minimum contacts analysis." *Miller Yacht Sales*, 384 F.3d at 100 (citing *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482–83 (3d Cir. 1993)). Plaintiffs have therefore satisfied the plausibility requirement for purposeful availment.

Defendants nevertheless raise several criticisms of Plaintiffs' purposeful availment theory. *First*, Defendants argue that Plaintiffs impute JLRNA's actions to JLR Limited but cannot do without bringing an agency/alter ego theory, which Plaintiffs concede they do not. Reply at 3–4, 6–7. Defendants are correct that Plaintiffs' theory for personal jurisdiction is not premised on an agency/alter ego theory. Opp'n at 9 ("[S]pecific personal jurisdiction exists here based on the UK Defendants' own actions not on an agency or alter ego theory of personal jurisdiction nor the UK Defendants' mere ownership of JLRNA as a subsidiary." (citation modified)). Defendants, however, improperly discount the relationship between JLR Limited and JLRNA and mischaracterize Plaintiffs' arguments as solely premised on JLRNA's actions.

As explained above, JLR Limited *sells to* a New Jersey entity. It does so repeatedly, and it does so necessarily and exclusively as part of its efforts to serve the national market. Specific jurisdiction is therefore premised on *JLR Limited's* actions and efforts. And while Plaintiffs do not rely on "a strict agency theory," Opp'n at 10, JLRNA's actions nevertheless bear on the jurisdictional question because agency relationships are "relevant to the existence of specific jurisdiction," *Daimler*, 571 U.S. at 135 ("'[M]arketing a product through a distributor who has agreed to serve as the sales agent in the forum States' may amount to purposeful availment." (quoting *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987)

8

(plurality opinion))). Plaintiffs point to evidence indicative of a collaborative relationship between the New Jersey entity and JLR Limited. *See* D.E. 100-3 at 1 ("JLRNA employees in New Jersey manag[e] the automaker's business in the United States and Canada."); *see also* Martinez Decl. ¶ 20 ("JLR Limited does not *directly* control JLRNA's marketing strategy." (emphasis added)). JLR Limited has even gone so far as to refer to JLRNA as its "Mahwah-based arm." D.E. 100-3 at 1. Plaintiffs' case, therefore, properly takes into account both JLR Limited's actions and its relationship with JLRNA.

*Second*, Defendants argue that Plaintiffs argue a distributorship theory for personal jurisdiction that the Supreme Court found was invalid in *Bristol-Myers*. Reply at 3, 6. The Supreme Court did explain in *Bristol-Myers* that "[t]he *bare fact* that [a nonresident defendant] contracted with a [forum] distributor is not enough to establish personal jurisdiction."[5] 582 U.S. 255, 257 (2017) (emphasis added). But the Supreme Court also explained in *Daimler* that a *partnership* with a forum distributor may be enough. *See Daimler*, 571 U.S. at 135 n.13 ("[A] corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there."). Here, JLR Limited does not simply pay for distribution services from an entity that happens to be in New Jersey. JLR Limited *sells* all its vehicles meant for the United States to

---

[5] This Court also points out that the *Bristol-Myers* plaintiffs sought to premise jurisdiction on the fact that one of Bristol-Myers Squibb's distributors sat in California, but the facts of that case indicate that there were *multiple* distributors. *See Bristol-Myers*, 582 U.S. at 268 ("[I]t is impossible to trace a particular [product] to a particular person . . . . It's not possible for us to track particularly to [the California distributor]."). This raises the potential question of much of a manufacturer's product must go *through* a particular distributor for the distributor's forum to exercise jurisdiction over the nonresident manufacturer. The caselaw instructs that the contacts with the forum must amount to *purposeful availment*. Here, because *all* sales in North America necessarily flow through New Jersey before distribution, the Court finds that JLR Limited purposefully avails itself of New Jersey. Nevertheless, this Court need not rely on an exclusive distributorship theory to exercise specific jurisdiction. JLR Limited does not just *distribute through* a New Jersey entity. JLR Limited also *sells to* a New Jersey entity.

9

the subsidiary it established in New Jersey with the expectation that the New Jersey entity will then sell and distribute JLR Limited's vehicles throughout the country. *See also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295–96 (1980) (finding that specific jurisdiction did not apply in part because the nonresident defendant did not sell to any forum resident). Plaintiffs, therefore, allege more than just a happenstance distributorship relationship.

*Third*, Defendants argue that Plaintiffs rely only on JLR Limited's efforts to service the North American market and that Plaintiffs' argument boils down to an impermissible stream-of-commerce theory. Reply at 8–10. Defendants again attack a strawman theory. In *Shuker v. Smith & Nephew PLC*, the Third Circuit explained that "efforts to exploit a national market that necessarily included [the forum] are insufficient." 885 F.3d 760, 780 (3d Cir. 2018). But Plaintiffs do not argue that JLR Limited's general efforts to sell vehicles in the national market, including New Jersey, are enough to support this Court's exercise of specific jurisdiction. Plaintiffs argue that JLR Limited sells to a New Jersey entity and uses the New Jersey entity as a storefront for national sales. Opp'n at 6. That argument is a distinct one.[6] *See Nicastro*, 564 U.S. at 877–78 ("[I]t is petitioner's purposeful contacts with New Jersey, not with the United States, that alone are relevant.").

---

[6] To the extent that Defendants argue that *Shuker* controls this case because it apparently rejects the argument that jurisdiction exists because "[the nonresident defendant] sold its product through [a related corporation] in Pennsylvania as part of its efforts to sell products in the United States generally," that reading of *Shuker* is imprecise. In *Shuker*, the related purchaser/distributor—Smith & Nephew—was headquartered in Tennessee and incorporated in Delaware, not in Pennsylvania. *Shuker v. Smith & Nephew PLC*, No. 16-3785, Appellee Brief, at 4 (3d Cir. Mar. 24, 2017). The argument that the *Shuker* plaintiffs made was that specific jurisdiction existed in Pennsylvania because the nonresident defendant "sold its products through Smith & Nephew in Pennsylvania as part of its "efforts 'to exploit a national market' that 'necessarily included Pennsylvania.'" *Shuker*, 885 F.3d at 780 (quoting *D'Jamoos*, 566 F.3d at 104). The Third Circuit was not referring to a nonresident defendant that sold to a forum entity.

Nor are JLR Limited's contacts with New Jersey based on JLR Limited's act of "placing a product in the steam of commerce, and the stream eventually swe[eping] defendant's product into the forum state." *Asahi*, 480 U.S. at 120; *see also Nicastro*, 564 U.S. at 877–78 (explaining that the "'stream-of-commerce' doctrine cannot displace" the requirement for purposeful availment). It is no fluke that JLR Limited's sales end up going through New Jersey. JLRNA is JLR Limited's "U.S. national sales company" and "Mahwah-based arm." For JLR Limited to profit off of sales in the United States, JLR Limited *must* sell to the New Jersey entity. There are no JLR Limited vehicles, defective or not, on American roads save for JLR Limited's sales to JLRNA. JLR Limited's business, therefore, goes through New Jersey by design.

Finally, another district court exercised specific jurisdiction on nearly identical facts as those here. *See Bullard v. Jaguar Land Rover Automotive PLC*, No. 20-14464, 2023 WL 4841610, at *4 (D.N.J. July 28, 2023) (exercising specific jurisdiction because "Defendants sell their vehicles to a New Jersey-based entity, JLRNA, with the expectation that JLRNA will service the North American market. And this line of business is a relatively large portion of the organization's revenue, and it is exclusively conducted through JLRNA in New Jersey."). And other district courts here have similarly found that nonresident manufacturers purposefully avail themselves of New Jersey when they use a New Jersey entity as their storefront for national sales. *See, e.g.*, *Rose v. Ferrari N. Am., Inc.*, No. 21-20772, 2023 WL 4914313, at *1 (D.N.J. July 31, 2023) (finding purposeful availment plausible because a nonresident manufacturer used a New Jersey entity as its exclusive distributor); *Rickman v. BMW of N. Am. LLC*, 538 F. Supp. 3d 429, 437 (D.N.J. 2021) (finding purposeful availment plausible because "New Jersey-based BMW NA serves as BMW AG's gateway to the United States"); *c.f. Tijerina v. Volkswagen Grp. Of Am.*, No. 21-18755, 2023 WL 6890996, at *10–13 (D.N.J. Oct. 19, 2023) (finding no purposeful availment in New Jersey in

11

part because the New Jersey-based entity was not the nonresident manufacturer's "gateway" into the United States).

This Court joins the above line of cases and agrees that JLR Limited deliberately extended its business into New Jersey to serve North America. Under these circumstances, JLR Limited can hardly say its contacts with New Jersey are "random, isolated, or fortuitous." *Ford*, 592 U.S at 359 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). Therefore, this Court finds that Plaintiffs plausibly show that JLR Limited purposefully availed itself of doing business in New Jersey.

2. *Connection to claims*

For a court to exercise specific jurisdiction, the contacts with the forum state "must give rise to—or relate to—plaintiff[s'] claims." *Facebook*, 14 F.4th at 207. But there need only be "a 'connection' between a plaintiff's suit and a defendant's activities." *Id.* at 361 (quoting *Bristol-Myers*, 582 U.S. at 256). There need not be a "strict causal relationship" between the defendant's activities and the plaintiff's suit. *Id.* at 362.

Plaintiffs' claims are based on the purchase or lease of Class Vehicles with defective windshields. Plaintiffs' claims therefore relate to the design, manufacture, marketing, and sale/lease of the Class Vehicles. JLR Limited designed and manufactured the allegedly defective Class Vehicles and sold them to JLRNA with the goal that they be distributed throughout North America. JLRNA's website—which is specific to the United States—represents that JLR Limited is responsible for improving "the specification, design, and production of its vehicles, parts, options, and/or accessories."[7] Plaintiffs allege that JLR Limited communicated with JLRNA

---

[7] *See* https://www.landroverusa.com/ownership/warranty.html.

regarding the defective windshields, warranty claims, and sales and demand data for the windshields.[8]  CCAC ¶¶ 244–46, 255.  JLR Limited's contacts with JLRNA, therefore, appear to revolve around, if not exclusively concern, at least the design, manufacture, and sale of vehicles to American consumers, including the Class Vehicles.

That JLR Limited physically sold the Class Vehicles to JLRNA abroad does not defeat jurisdiction here.  *See Ford*, 592 U.S. at 362 (rejecting the argument that a forum cannot extend jurisdiction if the "first sale, manufacture, and design" of defective products took place outside the forum state).  "For the owners of these cars might never have bought them, so these suits might never have arisen, except for [JLR Limited's] contacts with [New Jersey]." *Id.* at 367.  There is, therefore, a sufficiently strong relationship between JLR Limited, New Jersey.

        3.     *Notions of substantial justice and fair play*

To determine whether the exercise of personal jurisdiction would comport with notions of fair play and substantial justice, courts should consider whether "[t]he relationship between the defendant and the forum [is] such that it is 'reasonable to require the corporation to defend the particular suit which is brought there.'" *World-Wide Volkswagen*, 444 U.S. at 292 (quoting *Int'l Shoe*, 326 U.S. at 317).  Consideration of this relationship "sometimes serve[s] to establish the reasonableness of jurisdiction upon a lesser showing of minimum contracts than would otherwise be required." *Burger King*, 471 U.S. at 477.

---

[8] In *Kearney v. Bayerische Motoren Werke Aktiegesellschaft*, the court there held that specific jurisdiction did not apply because the nonresident defendant's contacts with the forum state did not reveal any "involvement in consumer-facing statements" and therefore did not demonstrate any relation to plaintiffs' claims regarding certain defective sunroofs.  No. 17-13544, 2021 WL 1207476, at *6 (D.N.J. Mar. 31, 2021).  However, this finding came after the parties had engaged in discovery.  *Id.* at *8.  No discovery has taken place here and discovery may very well demonstrate JLR Limited's involvement with marketing or other relevant activities.

13

It is, however, Defendants' burden to raise the issue before this Court. *Mellon Bank*, 960 F.2d at 1227. Having failed to do so, this Court refrains from considering whether the constitutional assertion of jurisdiction is otherwise unreasonable. *Id.*

Having found that JLR Limited purposefully availed itself of doing business in New Jersey, that JLR Limited's contacts with New Jersey bear a sufficiently strong relationship to Plaintiffs' claims regarding the purportedly defective windshields in the Class Vehicles, this Court will **DENY in part** Defendants' Motion as to JLR Limited.

### B.    JLR Automotive

JLR Automotive is a holding company headquartered in and incorporated under the laws of England and Wales. JLR Automotive does not manufacture, develop, design, market, or sell *anything*. It is multiple levels removed from JLRNA and from New Jersey. Plaintiffs make no allegations specific to JLR Automotive that indicate that it has *any* contact with New Jersey as a forum or with a New Jersey entity. Plaintiffs' arguments regarding JLR Automotive are instead all subsumed within their arguments regarding JLR Limited. *See generally* Opp'n (referring to both JLR Limited and JLR Automotive as the "UK Defendants").

It, however, is well established in New Jersey that a nonresident defendant is not subject to a forum's exercise of jurisdiction just because the nonresident defendant is related to a corporate entity that *does* have contacts with the forum. *Seltzer v. I.C. Optics, Ltd.*, 339 F. Supp. 2d 601, 609 (D.N.J. 2004) (citing *State, Dep't of Env't Prot. v. Ventron Corp.*, 94 N.J. 473, 500 (1983)). Because Plaintiffs have identified nothing specific about JLR Automotive's actions and relationship with New Jersey or with JLRNA, Plaintiffs have not shown that JLR Automotive have purposefully availed itself of New Jersey, or that they are entitled to jurisdictional discovery into JLR Automotive's contacts with New Jersey.

Having found that Plaintiffs have failed to demonstrate any contacts that JLR Automotive *specifically* has with New Jersey, the Court will **GRANT in part** Defendants' Motion as to JLR Automotive.

IV.     **CONCLUSION**

For the reasons described above, the Court will **GRANT** Defendants' Motion as to JLR Automotive, **DISMISS** JLR Automotive *without prejudice*, and **DENY** Defendants' Motion as to JLR Limited *without prejudice*.  An appropriate Order accompanies this Opinion.

Dated: September 24, 2025

_____
Evelyn Padin, U.S.D.J.

15